Sandeep Seth (CA State Bar No. 195914)
Email:  ss@sethlaw.com
SETHLAW PLLC
Pennzoil Place
700 Milam Street, Suite 1300
Houston, Texas 77002
Tel: (713) 244-5017
Fax: (713) 244-5018

Stanley H. Thompson, Jr. (CA State Bar No. 198825)
E-mail: stan@thompsontechlaw.com
THOMPSON TECHNOLOGY LAW
655 N. Central Ave., 17th Floor
Glendale, CA  91203
Tel: (323) 409-9066

*Attorneys for Plaintiff*
Enovsys LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOVSYS LLC, <br><br> Plaintiff, <br><br> v. <br><br> LYFT, INC., <br><br> Defendant. | Case No.: 5:23-cv-05157 <br><br> **ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Enovsys LLC ("Enovsys" or 'Plaintiff'), by and through its undersigned counsel, alleges the following for its Complaint against Lyft, Inc. ("Lyft" or "Defendant"):

## NATURE OF THE ACTION

1.     This is an action for infringement of one or more claims of United States Patent Nos. 6,441,752; 6,756,918; and 7,199,726 brought under the patent laws of the United States, Title 35, United States Code against Lyft in connection with its location-based services.

## THE PARTIES

2.     Plaintiff Enovsys LLC is a California limited liability company having a place of business at 269 South Beverly Drive, Suite 951, Beverly Hills, CA 90212.

3.     Upon information and belief, Defendant Lyft, Inc. is a corporation incorporated under the laws of the State of Delaware.

4.     Lyft is headquartered and has a principal place of business at 185 Berry Street, Suite 400, San Francisco, California 94107 and may be served through its agent for service of process, The Corporation Trust Company, at 330 North Brand Boulevard, Suite 700, Glendale, California 91203.

## JURISDICTION AND VENUE

5.     This patent infringement action arises under the patent laws of the United States, including 35 U.S.C. §§ 271 et seq., 281, and 284-85, amongst others.

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.     This Court has personal jurisdiction over Defendant. Lyft is subject to this Court's specific and general jurisdiction because it has and continues to conduct and solicit substantial business in the United States, the State of California and this District. Lyft, directly or through its intermediaries, provides, offers for sale, sells and advertises its services in the United States, the State of California, and within this District. Lyft has committed the acts of patent infringement that are the subject of this Original Complaint in the United States, the State of California and this District.

8.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Upon information and belief, Defendant has transacted business in this District and has committed, by itself or in concert with others, acts of patent infringement in this District. In addition, Defendant maintains one or more regular and established places of business in this District, and upon information and belief, its corporate headquarters are located in this District.

## FACTUAL BACKGROUND

## ENOVSYS AND ITS INTELLECTUAL PROPERTY

9.     Enovsys has engaged in consultancy and development in location-based services in wireless technology and owns intellectual property related to such technology. Enovsys's location-based wireless technology has been licensed by Sprint and was the subject of settlement agreements with telecommunication providers Verizon and T-Mobile. *See Enovsys LLC v. Verizon Communications, Inc. et al.*, No. 2:21-cv-00315-JRG, Dkt. 106 (E.D. Tex. Aug. 29, 2022) and *Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-cv-00368-JRG, Dkt. 100 (E.D. Tex. Nov. 11, 2022).

10.     Enovsys is the assignee, and the sole and exclusive owner of all right, title and interest, in United States Patent Serial No. 6,441,752 (hereinafter "the '752 patent"), entitled "Method and Apparatus for Locating Mobile Units Tracking Another or Within a Prescribed Geographic Boundary."

11.     The '752 patent was duly and legally issued by the United States Patent and Trademark Office (PTO) on August 27th, 2002. The named inventor of the '752 patent is Mundi Fomukong. A true and correct copy of the '752 patent is attached as Exhibit A.

12.     Enovsys is the assignee, and the sole and exclusive owner of all right, title and interest, in United States Patent Serial No. 6,756,918 (hereinafter "the '918 patent"), entitled "Method and Apparatus for Locating Mobile Units Tracking Another or Within a Prescribed Geographic Boundary."

- 2 -

13.     The '918 patent was duly and legally issued by the USPTO on June 29th, 2004. The named inventor of the '918 patent is Mundi Fomukong. A true and correct copy of the '918 patent is attached as Exhibit B.

14.     Enovsys is the assignee, and the sole and exclusive owner of all right, title and interest, in United States Patent Serial No. 7,199,726 (hereinafter "the '726 patent"), entitled "Method and Apparatus for Locating Mobile Units Tracking Another or Within a Prescribed Geographic Boundary."

15.     The '726 patent was duly and legally issued by the USPTO on April 03, 2007. The named inventor of the '726 patent is Mundi Fomukong. A true and correct copy of the '726 patent is attached as Exhibit C.

16.     The '752 patent, the '918 patent and '726 patent are referred to collectively as the "Asserted Location-Based Service Patents" or "Patents-In-Suit."

17.     The Asserted Location-Based Service Patents are valid and enforceable.

18.     Enovsys alleges that Lyft has infringed and continues to infringe one or more claims of the patents-in-suit by engaging in acts that constitute infringement under 35 U.S.C. § 271 et seq., including but not limited to making, using, offering for sale, and/or selling within the United States certain products and services which embody, or in combination embody, one or more claims of the patents-in-suit.

19.     On information and belief, these products and services include, for example, ride services provided via the Lyft Mobile Network, including servers at the Lyft Platform wirelessly connected to Lyft's Driver Applications and Lyft Customer mobile device applications on iOS, Android, and Microsoft operating systems (respectively, "Driver App" and "Customer App"), as well as the various Lyft ride service, ride-sharing, car-pooling, and delivery services provided therethrough (collectively, the "Accused Products and Services"). The Accused Products and Services permit a customer to request a service through the Customer App from Lyft drivers located in the same geographic area and allow the rider to track the location of nearby Lyft drivers, including the driver accepting the service request in coverage areas.

20.     Upon information and belief, the Lyft Platform will only accept ride requests originating from within one of Lyft's coverage areas, but a ride may be accepted for a destination that is outside the coverage area as long as the total ride distance does not exceed 100 miles. The Lyft Platform performs geolocation verification to ensure that a request is originating from within one of its coverage areas and verifies that the ride will conform to the 100-mile limit if the destination location is outside one of its coverage areas.

21.     Upon information and belief, Lyft requires drivers providing services through Lyft to use the Driver App provided by Lyft to access the Lyft Mobile Network.

22.     Upon information and belief, the Lyft Platform processes on the order of one to two million ride requests daily wherein the data processing times must be small so that the requests can be fulfilled without any noticeable delay.

23.     At the same time, the Lyft Platform must maintain accurate database entries for drivers, riders, and trips.  Additionally, the Lyft Platform tracks where each user and driver is located and their current state by collecting and storing location information for users and drivers. In order to ensure short processing times of service requests, the Lyft Platform must utilize extensive data optimization schemes.

24.     To this end, the Lyft Platform divides the Lyft Mobile Networks service area into multiple geographic regions (*e.g.*, Google S2 geospatial cells).  One or more servers collect, store, and process data associated with the S2 geospatial cells in Lyft's coverage area, including calculating S2 geospatial cells from GPS latitude and longitude data and maintaining location truth and driver proximity caches. The term "S2 server" and the like used below refers to the collection of servers/components that collect, store, and process geolocation data. When a service request is made, the Lyft Platform assigns a search area having a specified radius from the GPS coordinates of the service request and identifies the S2 geospatial cells within that search area. The search therefore will result in only identifying the location of drivers within close

proximity of the requesting customer who are online and have a status making them eligible to accept service requests.

## LYFT AND ITS WIRELESS
## LOCATION-BASED SERVICE OFFERINGS

25.     Upon information and belief, Lyft is a leading provider of location-based services in the United States and the world, with its wireless networks and services covering many major metropolitan areas of the U.S.A. serving millions of its customers.

26.     Upon information and belief, Lyft uses various geolocation techniques in order to provide its location-based services through the Lyft Mobile Network, which includes the Lyft Platform and both Driver Apps and Customer Apps installed on devices able to maintain communication with and report their location to the Lyft Platform.

27.     Upon information and belief, when a rider in a specific geographic area opens the Lyft Customer App on their smartphone, location services within the Customer App are activated. These services gather the customer's location data using at least the onboard GPS unit of the smartphone. The collected data, including customer metadata, is then transmitted to the Lyft Platform over wireless channels between the Customer (and Driver) Apps and the Lyft Platform.

28.     Upon information and belief, the Lyft Platform receives the collected data in messages from the Customer App and updates a database in Lyft's data warehouse with essential details such as the User's ID and current location.

29.     Upon information and belief, when a driver in a specific geographic area activates the online mode in the Driver App on their smartphone, the Driver App obtains at least GPS data and periodically securely transmits the driver's real-time location data along with metadata such as the driver's user ID, vehicle type, and trip status in messages to the Lyft Platform.

30.     Upon information and belief, as a result of receiving these messages via the Lyft Mobile Network, the Lyft Platform receives data messages from the Driver

App and updates a database in Lyft's data warehouse containing essential details such as the driver's user ID, vehicle type, current vehicle location, trip status and more.

31.     Upon information and belief, the Customer App and Driver App location coordinates are converted into a unique key that indicates a particular geographic region (*e.g.*, a Google S2 geospatial cell) that the customer or driver is located within, and the customer or driver's real-time location information is maintained in servers on Lyft's platform.

32.     When active, the Customer App's user interface displays the rider's current location and presents available service options such as Lyft, Lyft XL, and Lyft Lux cars currently on the road. Riders can enter their pickup and destination locations and choose from the available service options. The Customer App user interface displays the calculated route from the current location to the destination, the estimated price for various available ride options, and the estimated time of arrival ("ETA") for the Lyft ride to the pickup location, making it convenient for the rider to plan their journey.

33.     Upon information and belief, when a rider plans a ride, the Lyft Platform utilizes the rider's location coordinates to create a unique key that identifies the geographic region (*e.g.*, a Google S2 geospatial cell) and assesses the real-time demand for rides and the availability of drivers in that geographic region. The Lyft Platform uses an algorithmic pricing component that factors in demand for rides and availability of drivers and establishes bonus zones in which a driver receives a financial reward for moving into that zone to be available for a ride.

34.     Upon information and belief, the Driver Apps in nearby geographic regions (*e.g.*, Google S2 geospatial cells) also receive data messages from the Lyft Platform with information that indicates the geographic hotspots where people are most likely to need rides and bonuses available for entering those areas, which are displayed by the user interface of the Driver Apps.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO. 5:23-cv-05157

35.     When a rider has selected a ride option such as Lyft, Lyft XL, or Lyft Lux and confirms they wish to proceed with the ride, the Customer App sends a message containing the request details to the Lyft Platform, including customer and ride details.

36.     Upon information and belief, when a component of the Lyft Platform receives the service request, the details are routed to a match component which interfaces with other components to immediately begin searching for available drivers for the chosen option.

37.     Upon information and belief, the Lyft Platform efficiently utilizes geospatial indexing mechanisms, leveraging the Google S2 library, to process location coordinates received from the Driver and Customer Apps and convert these coordinates into distinct geospatial S2 cells. This process involves computing a GeoHash based on the longitude and latitude, resulting in a unique key as S2 geospatial cell's ID (*i.e.*, indicating its geographic region.)

38.     Upon information and belief, each S2 geospatial cell is represented in one or more Lyft Platform database servers which store driver proximity data and other essential data metrics related to both the driver and the rider.  These metrics are stored for drivers and riders within or near that cell. This strategic geospatial indexing allows Lyft to organize and manage location-based data efficiently. By computing the rider's S2 geospatial ID, Lyft can also determine the nearby S2 geospatial IDs in a dispatch area of a given radius to match drivers and riders.

39.     Upon information and belief, a match system at the Lyft Platform strategically selects the dispatch area or region by associating a collection of nearby S2 geospatial IDs and looks up the data metrics associated with the active Driver Apps currently in it to determine which active Driver Apps are currently in a status making them eligible candidates to receive invitation notifications to accept the requested service.

40.     Upon information and belief, the Lyft Platform employs intelligent algorithms to select candidate drivers who are eligible to accept the trip that ensures

that the candidate drivers are selected with an overall minimum average estimated time of arrival to the rider's pickup location.

41.     The Lyft Platform sends notifications informing selected candidate drivers within the dispatch area of the ride request the fee Lyft will pay the driver, the distance and time to the rider's pickup location, and the estimated ride duration and distance. When a driver accepts the request, the Driver App sends a notification via the Lyft Mobile Network to the Lyft Platform indicating a successful driver match is made with the rider.

42.     Upon information and belief, upon receiving such a notification, the Lyft Platform updates the state of the ride to indicate that the pickup phase has begun, at which time the Lyft Platform receives and monitors regular location updates from the accepting driver's Driver App and the requesting rider's Customer App to monitor that the driver and rider remain in proximity while the driver is *en route* to the rider, for example that both have remained proximate to the pickup route that joins them.

43.     After the driver has accepted the service request, the Lyft Platform promptly sends to the Customer App a notification that displays a message confirming the successful match and informing the rider that the vehicle is *en route*.

44.     The Lyft Platform sends to the Customer App a notification containing essential details about the driver, such as the driver's name, photo, vehicle type, and estimated time of arrival (ETA) to the pickup location, and location. The Rider's App displays the driver's location, allowing the rider to track the driver's location.

45.     The Lyft Platform also sends a notification to the Driver App with the rider details and the route to the pickup location of the rider. Moreover, if the rider's live location is available, the Lyft Platform also sends the live location coordinates to the Driver App for Display to the driver and use by the Driver App, for example to update the route to the pickup location as needed. The Lyft Platform receives in any event the rider's live location for use at the Lyft Platform.

46.     As the driver approaches the pickup location, the Lyft Platform sends to the Customer App a notification to inform them of the driver's imminent arrival which is displayed by the user interface of the Customer App.

47.     When the rider has been picked up, in response to an input from the driver, the Driver App notifies the Lyft Platform that rider pickup has been completed and the trip has begun.

48.     The Lyft Platform sends a notification to the Customer App, indicating that the trip is now in progress. This notification serves as a confirmation that the journey has commenced and that the driver and rider are in relative proximity with each other and provides the rider with real-time updates on the status and progression of their trip; in particular, the Customer App displays an icon indicating the real-time location of the car on its route to the destination.

49.     Upon information and belief, the Lyft Platform periodically monitors the trip using the GPS pings from the Driver App and the Customer App from the pickup location to the destination location to ensure that the two remain substantially co-located for the trip's duration.

50.     Upon information and belief, the Lyft Platform's tracking of the driver and rider location to confirm that they maintain relative proximity (and remain on the intended route) is made for safety and billing purposes to verify that the rider was present on the ride from start to finish.

51.     Upon information and belief, if the Lyft Platform detects from the GPS pings that the Driver App and the Customer App are not co-located during the trip, *e.g.*, that the rider has left the car for more than a period of time during an unscheduled stop, Lyft representatives receive a notification from the Lyft Platform and will contact the driver and/or rider to determine whether there is a safety issue.

52.     Upon information and belief, when the destination is reached, the Driver App sends a notification to the Lyft Platform indicating the end of the trip. The Lyft Platform updates the status of the ride, rider, and driver and generates a notification to both the rider and the driver providing the total fee/fare and other information. The Lyft

Platform also sends the trip data to a server component for storage, including location data indicating that the Driver App's and Customer App's reported coordinates tracked each other and remained in relative proximity for the ride.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,441,752

53.    Enovsys repeats, realleges, and incorporates by reference the foregoing paragraphs of the Original Complaint as if fully set forth herein.

54.    The claims of the '752 patent are generally directed to beneficial methods and systems for providing the location of portable mobile devices in a geographic region of a wireless network to a wireless consumer requesting the location of portable mobile devices that are maintaining close proximity to the wireless consumer in the geographic region.

55.     The claims of the '752 patent are generally directed to various techniques based upon whether portable mobile remote units have maintained close proximity to a wireless consumer in a geographic region of a wireless network.

56.    Upon information and belief, Lyft has directly infringed one or more claims of the '752 patent under 35 U.S.C. § 271(a) by, among other things, making, using, offering to sell, and/or selling in the United States products and services used by, or under the direction or control of, Lyft in practicing one or more claims of the '752 patent, including, by way of example and without limitation, the Accused Products and Services.

57.    The Accused Products and Services infringe at least claims, 1, 3, 4, 6, 7 and 12 of the '752 patent.

58.    Claim 1 recites: "[a] method for providing the location of a portable mobile remote unit in a geographic region of a wireless network to a wireless consumer requesting the location of portable mobile remote units that are maintaining close proximity to the wireless consumer in the geographic region." Upon information and belief, and to the extent that the preamble is limiting, the Accused Products and Services practice the recited method.

59.     For example, the Lyft Platform provides to a Customer App the location of one or more online Driver Apps within the same S2 geospatial cell as the rider when the Customer App is active, such as when the rider has opened the Customer App and is planning a ride or has made a ride request.

60.     Claim 1 requires: "i) obtaining the location of the wireless consumer at intervals over a period of time." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

61.     For example, the Lyft Platform periodically obtains from the Customer App its GPS location coordinates when the Customer App is active, such as when the rider has opened the Customer App and is planning a ride or has made a ride request.

62.     Claim 1 requires: "ii) requesting at each interval, at the network, that all mobile remote units within close proximity of the wireless consumer disclose their location to the network." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

63.     For example, the Lyft Platform requests all online Driver Apps to periodically update the Lyft Platform of their current GPS coordinates, including the Driver Apps located within the S2 geospatial cell of the active Customer App. As a further example, all online Driver Apps and Customer App transmit their respective GPS coordinates (along with identifying data) to the Lyft Platform periodically.

64.     Claim 1 requires: "iii) maintaining a list of mobile remote units that provided their location at each interval after the request of (ii)." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

65.     For example, when the Customer App has sent a notification with the start and end locations of a planned ride, the match and location systems of the Lyft Platform identify a list of the online Driver Apps within the S2 geospatial cell of the active Customer App that have reported their location since the time the Customer App made the service request and are eligible to accept the service request.

66.    Claim 1 requires: "iv) from the list of (iii), forwarding the location of at least a mobile remote unit to the mobile consumer upon determination that the remote unit maintained close proximity to the mobile consumer over the period of time of (i)." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

67.    For example, the Lyft Platform forwards to the active Customer App, from the identified list, the currently reported location it has received for the Driver App that accepted the service request.

68.    Claim 3 recites: "[a] technique employed by the method according to claim 1 to determine if a remote unit is within a specified geographic boundary or close proximity to a wireless consumer." Upon information and belief, and to the extent that the preamble is limiting, the Accused Products and Services practice the recited method.

69.    For example, the match and/or location system/service in the Lyft Platform determines which Driver Apps are located in any given S2 geospatial cell included in the Lyft Mobile Network as a covered area that is in the vicinity of or in the same S2 geospatial cell as active Customer Apps that are planning or requesting a service.

70.    Claim 3 requires: "obtaining from the network geographic information describing the geographic boundary." Upon information and belief, the Accused Products and Services practice the recited method.

71.    For example, the Lyft Platform calculates which S2 geospatial cell (s) are hotspots where people are most likely to need rides, determines which Driver Apps are currently located in S2 geospatial cell(s) nearby to such S2 geospatial cell(s), and sends notifications to such Driver Apps of the location of hotspots.

72.    Claim 3 requires: "estimating at the remote unit if the current location of the remote unit is within the geographic boundary obtained at the network." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

73.   For example, when the Driver Apps receive demand hotspot data, they display nearby demand hotspots and bonuses available for entering those areas.

74.   Claim 4 recites: "[a] method according to claim 1 utilized to further limit the provision of remote unit location to the network." Upon information and belief, and to the extent the preamble is limiting, the Accused Products and Services limit the provision of remote unit location to the network.

75.   For example, when a Driver App attempts to go online it sends a synchronous message to the Lyft Platform with its GPS coordinates and other data indicating that it wishes to establish a continuously asynchronous connection with the Lyft Platform to communicate, including to receive service requests. Upon information and belief, the Lyft Platform will determine whether the Driver App is located in an S2 geospatial cell that is covered by the Lyft Mobile Network before establishing that connection and allowing it to periodically update the Lyft Platform with its state and location.

76.   Also, when S2 servers at the Lyft Platform are queried by the match system for eligible Driver Apps located in those S2 geospatial cells, they will return the locations of Driver Apps not in the correct condition (state) to be eligible to receive a ride request or not in a territory where they are eligible to receive a service request, such as being located outside of the coverage area.

77.   One example is if the Driver App has sent a message to the Lyft Platform indicating that they do not wish to receive requests in a given geographical area, the Lyft Platform will update the Driver's state table indicating a geographical boundary for which they are not eligible to receive service invitations and will exclude them as candidates for the match system when reporting a location therewithin.

78.   Claim 4 requires: "obtaining at the network, exclusion region information within which the remote unit should not provide its location the network." Upon information and belief, the Accused Products and Services obtain at the network exclusion region information within which the remote unit should not provide its location the network.

79.    For example, the Lyft match system and/or S2 system receive information indicating regions which, though they are covered areas of the network, are nonetheless areas wherein the Driver Apps are not eligible to match a service request. Likewise, if the Driver App sends GPS coordinates and other information to the Lyft Platform indicating to the match system that the Driver App is located in a pickup lot for an airport, the match system considers the Driver App to be located in an exclusion region wherein it is disqualified from participating in the normal ETA based match service (but rather only will be receiving such an invitation based upon its number in a queue). Likewise, as previously discussed, a Driver App has other exclusion regions wherein it is ineligible for the match service, such as S2 geospatial cells representing excluded regions or regions outside the coverage areas.

80.    Claim 4 requires: "determining that the remote unit is not in the exclusion region before providing the location of the remote unit to the network." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

81.    For example, the S2 servers determine whether a Driver App is not located in an exclusion region prior to sending that Driver App's location to the match system, such as when the Driver App is located in an S2 geospatial outside of the coverage areas, in an airport pickup lot, or in a region specifically communicated by the Driver App to the Lyft Platform where it should not receive ride requests.

82.    To illustrate, if a Customer App makes a service request from the customer's house located one mile away from an airport's pickup lot, the locations of Lyft Driver Apps in that parking lot will not be provided by the S2 servers to the match system.

83.    Conversely, if a Driver App is located near an airport pickup parking lot but is not located in the airport designated parking lot, the location of that Driver App will not be sent by the S2 servers to the match service if the request is coming from the airport, because those requests may only be assigned to the drivers in the queue in the pickup lot.

84.     Similarly, if a Driver App is reporting GPS coordinates outside of the coverage areas, that Driver App's location will not be provided by the S2 servers as a candidate for the match service, even if the service request is coming from a Customer App only 50 (fifty) feet from the Driver App and the pickup ETA would have been near instantaneous.

85.     Claim 6 recites: "[a] method for providing the location of portable remote units that exist within a prescribed geographic boundary to a wireless consumer requesting that information." Upon information and belief, and to the extent that the preamble is limiting, the Accused Products and Services practice the recited method.

86.      For example, the Lyft Platform provides the locations of nearby Driver Apps to a Customer App for the Customer App's user interface to display to the customer.

87.     Claim 6 requires: "i) receiving at the network a wider than normal prescribed geographic boundary to query for mobile remote units from the wireless consumer." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

88.     For example, when the Lyft Platform receives a service request from a Customer App, such as a ride request, it parses the identifier of the Customer App and its current GPS coordinates. The request is routed to a component of the Lyft Platform whose function is to match the request to proximate Driver Apps who are eligible to be notified of the request until one has accepted the request.

89.     In performing the match, the match system/service creates a circle of a given radius from the GPS coordinates of the request and identifies the various S2 geospatial cells comprising the area of the circle. The geographic boundary of the circle created and received by the match system is, of course, wider than the GPS coordinates of the Customer App. The Lyft Platform's match service queries the S2 servers responsible for maintaining the current location and status of the Driver Apps currently reporting locations within each of those S2 geospatial cells in order to obtain therefrom

a list of eligible Driver Apps. If, however, the S2 servers provide a list with too few Driver Apps (or none), the match service will increase the radius to make a much wider boundary for the search.

90.    Claim 6 requires: "ii) splitting the geographic boundary of (i) into sub geographic regions to constitute the prescribed geographic boundary." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

91.    For example, the match system/service of the Lyft Platform splits the area of the larger area circle into its constituent S2 geospatial cells.

92.    Claim 6 requires: "iii) requesting in the sub geographic region(s), the location of remote units that are present in each sub region." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

93.    For example, the match service of the Lyft Platform then makes a broader request to the S2 system by querying the assigned S2 server components for each of the constituent S2 geospatial cells comprising the area of the larger circle.

94.    Claim 6 requires: "iv) verifying after each request of (iii) in a sub region whether at least a portable remote unit disclosed a global location in the region." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

95.    For example, each of the queried S2 servers of the location system that receive the broader request from the match system/service component determine whether one or more Driver Apps have disclosed a location within their respective S2 geospatial cell(s) before concluding the query.

96.    Claim 6 requires: "v) maintaining a list of all remote units that disclosed their location after each request from the verification of step (iv)." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

97.     For example, upon receipt of the request from the match component of the Lyft Platform, each of the queried S2 servers create a list for return to the match component of eligible Driver Apps that have reported to the Lyft Platform a location with their respective S2 geospatial cell(s).

98.     Claim 6 requires: "vi) providing to the network and from the list of (v) the location of at least a remote unit that revealed its location in the sub region." Upon information and belief, and to the extent that the preamble is limiting, the Accused Products and Services practice the recited method.

99.     For example, the match component provides to a notification service of the Lyft Platform at least one eligible Driver App that can be sent an invitation to accept the service request so that the notification can be sent to the Driver App for its user interface to display to the driver to accept or decline.

100.   Claim 7 recites: "[a] technique according to claim 6, utilized to terminate a request for the location information of remote units in the prescribed geographic boundary." Upon information and belief, and to the extent the preamble is limiting, the Accused Products and Services practice the recited technique.

101.   For example, the match service will terminate its query to the S2 servers for the locations of Driver Apps upon the identification by the S2 servers of a sufficient number (which may be just one) of Driver Apps eligible to be sent an invitation to accept or reject the service request.

102.   Claim 7 requires: "checking to establish that a request for remote unit location information was undertaken in all re-defined or sub regions of the prescribed boundary or a portable remote unit in a defined or sub region responded with location information." Upon information and belief, the Accused Products and Services practice the recited method. For example, the Lyft Platform verifies that each queried S2 server searched its respective database(s) for the currently reported locations of eligible Driver Apps.

103.   Claim 12 recites: "a communication system." Upon information and belief, and to the extent the preamble is limiting, the Accused Products and Services comprise a communication system.

104.   For example, the Lyft Mobile Network wirelessly connects the Lyft Platform with Customer and Drivers Apps so that the Lyft Platform can transmit data to and receive data from the Customer and Driver Apps.

105.   Claim 12 requires: "a network of communication units." Upon information and belief, the Accused Products and Services comprise and utilize a network of communication units.

106.   For example, the Lyft Platform comprises communication units that send data to and receive data from each Driver App and Customer App. The Driver and Customer Apps enable the smartphones (or other communication devices) upon which they operate to send data to and receive data from the Lyft Platform via a cell phone service, the internet or another communication channel and also are communication units. As a further example, each of the Driver Apps and Customer Apps are programmed to enable wireless communication with the Lyft Platform via the portable remote devices (*e.g.*, smartphones). Each of these are "communication units." As a further example, the Customer Apps and Driver Apps are communication units that are adapted to communicate their GPS coordinates, messages and other data to the Lyft Platform and to receive GPS coordinates, messages and other data from the Lyft Platform and are utilized to provide the Accused Products and Service.

107.   Claim 12 requires: "at least a first communication unit and at least a second communication unit able to provide their location information to the network." Upon information and belief, the Accused Products and Services meet this limitation. For example, each active Driver App and Customer App is able to report its GPS coordinates (and other location information) to the Lyft Platform.

108.   Claim 12 requires: "the system able to determine and report that the at least second communication unit maintained close proximity to the at least first

communication unit over a period of time." Upon information and belief, the Accused Products and Services meet this limitation because there is at least one service running on the Lyft Platform that determines and reports whether one or more Driver Apps have maintained close proximity to one or more Customer Apps over a period of time.

109.   For example, a ride tracking component (system/service) of the Lyft Platform compares the GPS coordinates of each service-providing Driver App with the GPS coordinates of the corresponding service-requesting Customer App from at least the time of the start to the time of the end of the ride to determine that the two have remained substantially co-located during the time period. Amongst other reasons for such tracking, the Lyft Platform determines if there is an unscheduled time period for which the Customer App and Driver App have not maintained relative proximity. If so, that tracking component/service reports the deviation to a notification component/service that notifies a Lyft representative so they can investigate that the driver and rider are safe. Moreover, by tracking the relative proximity, the Lyft Platform confirms that the rider in fact took the paid-for ride in case of a later billing challenge. If the tracking server component/service determines from the GPS coordinate comparison that the two components have maintained their relative proximity until the ride ended at its intended destination, it reports to another server component that the ride was successfully completed.

110. Also, the Lyft Platform includes an algorithmic pricing component/system/service that factors in demand for rides and availability of drivers and provides data that can be sent to Driver Apps that indicates the geographic hotspots where people are most likely to need rides and bonuses available for entering those areas to encourage the nearby drivers to enter the hotspot's S2 geospatial cells.

111.   Furthermore, the Lyft Platform includes a match component that determines a plurality of eligible Driver Apps that are in close proximity to a given plurality of Customer Apps requesting ride services to determine which ones of such Driver Apps should be invited to accept the ride services so as to minimize the overall

wait time for that plurality of customers. The match component sends a message to a notification service that notifies the selected Driver Apps that they have been invited to accept the service request.

112.   Upon information and belief, to the extent that it is not directly infringing any of the above identified claim of the '752 patent, Lyft has actively induced and is actively inducing others (such as Lyft drivers and Lyft riders) to infringe these claims under 35 U.S.C. 271(b) by using the Accused Products and Services.

113.   Upon information and belief, to the extent that it is not directly infringing any of the above identified claim of the '752 patent, Lyft has contributed to and is contributing to the infringement by others (such as Lyft drivers and Lyft riders) of these claims under 35 U.S.C. 271(c) through the use of the Accused Products and Services.

114.   Upon information and belief, since becoming aware of the '752 patent, Lyft has provided the Lyft Driver App, Customer App and Platform for use by others (such as Lyft drivers and Lyft riders) and encouraged, aided, or otherwise caused others to use the Accused Products and Services in the United States in a way that infringes at least the above identified claims of the '752 patent.

115.   Upon information and belief, the Lyft Driver App and Customer App are not staple articles of commerce having no substantial non-infringing uses but rather are specifically intended for use in accessing and using the Accused Products and Services in a way that infringes at least the above-identified claims of the '752 patent.

116.   Upon information and belief, Lyft directly infringes one or more claims of the '752 patent literally, or induces or contributes to direct infringement that is literal. Alternatively, to the extent that Lyft's direct infringement or induced or contributory infringement for any claim is not found to be literal, such claims are infringed under the doctrine of equivalents.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,199,726**

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO. 5:23-cv-05157

117.   Enovsys repeats, realleges, and incorporates by reference the foregoing paragraphs of the Original Complaint as if fully set forth herein.

118.   The claims of the '726 patent are generally directed to beneficial methods and systems employing various techniques for tracking the proximity of one or more portable mobile devices located in a geographic region of a wireless network over a period of time and selectively notifying portable mobile devices in particular geographic regions.

119.   Upon information and belief, Lyft has directly infringed one or more claims of the '726 patent under 35 U.S.C. § 271(a) by, among other things, making, using, offering to sell, and/or selling in the United States products and services used by, or under the direction or control of, Lyft in practicing one or more claims of the '726 patent, including, by way of example and without limitation, the Accused Products and Services.

120.   The Accused Products and Services infringe at least Claims, 1, 4, 6, 8, 12 and 13 of the '726 patent.

121.   Claim 1 recites: "[a] communication system." Upon information and belief, and to the extent that the preamble is limiting, the Accused Products and Services comprise a communication system.

122.   For example, the Lyft Mobile Network wirelessly connects the Lyft Platform with Customer Apps and Driver Apps so that the Lyft Platform can transmit data to and receive data from the Customer Apps and Driver Apps.

123.   Claim 1 requires: "(i) a portable mobile remote unit." Upon information and belief, the Accused Products and Services include portable mobile remote units.

124.   For example, each of the Driver Apps and Customer Apps are installed on smartphones or mobile devices and comprise portable remote units.

125.   Claim 1 requires: "(ii) a network of communication units." Upon information and belief, the Accused Products and Services include a network of communication units.

126.   For example, the Lyft Platform comprises communication units that send data to and receive data from each Driver App and Customer App. The Driver and Customer Apps enable the smartphones (or other communication devices) upon which they operate to send data to and receive data from the Lyft Platform via a cell phone service, the internet or another communication channel and also are communication units. As a further example, each of the Driver Apps and Customer Apps are programmed to enable wireless communication with the Lyft Platform via the portable remote devices (*e.g.*, smartphones). Each of these are "communication units." As a further example, the Customer Apps and Driver Apps are communication units that are adapted to communicate their GPS coordinates, messages and other data to the Lyft Platform and to receive GPS coordinates, messages and other data from the Lyft Platform and utilized to provide the Accused Products and Service.

127.  Claim 1 requires: "(iii) the portable mobile remote unit able to communicate with at least a transmitter within the network to establish its geographic location within the system." Upon information and belief, the Accused Products and Services include a portable mobile remote unit able to communicate with at least a transmitter within the network to establish its geographic location within the system.

128.   For example, the Driver Apps are adapted to communicate their GPS coordinates and other location information to the Lyft Platform which then establishes its S2 geospatial and street location. (The Lyft Platform is a transmitter within the network because it transmits data to both Customer Apps and Driver Apps.)

129.   Moreover, the Driver and Customer Apps communicate with cell phone towers and GPS satellites to establish their geographic location within the system, such as GPS coordinates and other location information that the Lyft Platform uses to map to street locations.

130.   Claim 1 requires: "(iv) means to request for the location information of portable mobile remote units that are in a geographic boundary that is prescribed within the coverage area of said network." Upon information and belief, the Accused Products and Services include means to request for the location information of portable mobile

remote units that are in a geographic boundary that is prescribed within the coverage area of said network.

131.   For example, the Lyft Platform periodically obtains from the Customer App its GPS location coordinates and the Lyft Platform requests all online Driver Apps to periodically update the Lyft Platform of their current GPS coordinates within the S2 geospatial cell of the active Customer App that is a covered S2 geospatial cell within the Lyft Mobile Network.

132.   Claim 1 requires: "(v) means to provide the location information of the portable mobile remote unit to the network upon determination that the portable mobile remote unit is within said prescribed geographic boundary requested by the network." Upon information and belief, the Accused Products and Services include means to provide the location information of the portable mobile remote unit to the network upon determination that the portable mobile remote unit is within said prescribed geographic boundary requested by the network.

133.   For example, when the Lyft Platform receives a service request from a Customer App, such as a ride request, it parses the identifier of the Customer App and its current GPS coordinates. The request is routed to a match component of the Lyft Platform whose function is to match the request to proximate Driver Apps who are eligible to be notified of the request until one has accepted the request.

134.   In performing the match, the match system/service creates a circle of a given radius from the GPS coordinates of the request and identifies the various S2 geospatial cells comprising the area of the circle. The Lyft Platform's match service queries the S2 servers responsible for maintaining the current location and status of the Driver Apps currently reporting locations within each of those S2 geospatial cells in order to obtain therefrom a list of eligible Driver Apps.

135.   Likewise, upon information and belief, when a Driver App first logs in to the Lyft Platform, the Lyft Platform determines from the Driver App's reported GPS coordinates whether it is located in an S2 geospatial cell that is covered area of the Lyft

Mobile Network before allowing it to open a channel to periodically update the Lyft Platform of its location. Likewise for a Customer App logging in to the Lyft Platform.

136.   The Lyft Platform also requests all online Driver Apps and active Customer Apps to periodically update the Lyft Platform of their current GPS coordinates within every S2 geospatial cells covered by the Lyft Mobile Network. By design, these Apps update the Lyft Platform periodically with at least their current GPS position for the Lyft Platform to use and to convert to an S2 geospatial cell or a street location.

137.   Claim 1 requires: "(vi) means to determine and report to the system that, another portable mobile remote unit has maintained relative proximity to the portable mobile remote over a period of time while in motion." Upon information and belief, the Accused Products and Services include means to determine and report to the system that another portable mobile remote unit has maintained relative proximity to the portable mobile remote over a period of time while in motion.

138.   For example, the Lyft Platform receives location data indicating whether one or more Driver Apps were in close proximity to one or more Customer Apps at the beginning of a ride and were still in close proximity when the ride ended. For example, a ride tracking component (system/service) of the Lyft Platform compares the GPS coordinates of each service-providing Driver App with the GPS coordinates of the corresponding service-requesting Customer App from at least the time of the start to the time of the end of the ride to determine that the two have remained substantially co-located during the time period. Amongst other reasons for such tracking, the Lyft Platform determines if there is an unscheduled time period for which the Customer App and Driver App have not maintained relative proximity. If so, that tracking component/service reports the deviation to a notification component/service that notifies a Lyft representative so they can investigate that the driver and rider are safe. Moreover, by tracking the relative proximity, the Lyft Platform confirms that the rider in fact took the paid-for ride in case of a later billing challenge. If the tracking server

- 24 -

component/service determines from the GPS coordinate comparison that the two components have maintained their relative proximity until the ride ended at its intended destination, it reports the verification and tracking data of the successfully completed ride to at least a storage component in case later needed for law enforcement, billing, data analytic or other purposes.

139.   As a further example, the Lyft Platform includes an algorithmic pricing component that factors in demand for rides and availability of drivers and establishes bonus zones by determining which online Driver Apps and Customer Apps, both of which are in motion, are maintaining their location in any given S2 geospatial cell to determine whether a hotspot is needed in that S2 geospatial cell.

140.   The Lyft Platform also includes a match server component that determines which online Driver Apps (that are in motion) are in the same S2 geospatial cell as an active Customer App that is requesting a ride service in order to determine which Driver Apps in close proximity (*e.g*., having a low ETA to the location of the Customer App) should be invited to accept the service.

141.   The Lyft Platform also includes a ride verification component that determines that the service-providing Driver App remains substantially co-located with the service-requesting Customer App (that is also in motion) during a ride for both safety reasons and billing verification.

142.   Claim 4 recites: "[a] communication system for providing the location information of portable mobile remote units, in a geographic region to a wireless consumer requesting that information." Upon information and belief, and to the extent that the preamble is limiting, the Accused Products and Services comprise and utilize a communication system for providing the location information of portable mobile remote units in a geographic region to a wireless consumer requesting that information.

143.   For example, the locations of online Driver Apps within a certain geographical radius of an active Customer App are provided by the Lyft Platform to that Customer App for display to the customer planning a ride, *i.e.*, a Customer App

that has provided the Lyft Platform with a pickup and destination address for a planned or requested ride.

144.   Claim 4 requires: "i) a pool of portable mobile remote units that are able to communicate with a network transmitter to establish their location within the system." Upon information and belief, the Accused Products and Services comprise and utilize a pool of portable mobile remote units that are able to communicate with a network transmitter to establish their location within the system.

145.   For example, the Driver Apps (as well as the Customer Apps) are adapted to communicate their GPS coordinates and other location information to the Lyft Platform which then establishes the App's S2 geospatial and street location. The Lyft Platform is a transmitter within the network because it transmits data to both Customer Apps and Driver Apps.

146.   Moreover, both the Driver Apps and Customer Apps communicate with cell phone towers, Wi-Fi routers, and GPS satellites to establish their geographic location within the system, such as GPS coordinates and other location information that the Lyft Platform uses to map to street locations.

147.   Claim 4 requires: "ii) means for the wireless consumer to specify and forward to a network, geographic boundary information describing a region within the coverage area of said network where the location information of portable mobile remote units are required by the wireless consumer." Upon information and belief, the Accused Products and Services comprise and utilize means for the wireless consumer to specify and forward to a network geographic boundary information describing a region within the coverage area of said network where the location information of portable mobile remote units are required by the wireless consumer.

148.   For example, when the Customer App is opened and the customer plans a ride, the Customer App obtains from the smartphone its GPS coordinates and other location information and sends this information in a message to the Lyft Platform. The GPS coordinates specify to the Lyft Platform which S2 geospatial the Customer App is currently located in and that it is requesting to receive the location of Driver Apps

within a given radius thereof. The Lyft Platform sends back the locations of nearby Driver Apps, which are displayed by the user interface of the Customer App at least when the ride is in the planning stage.

149.   Again, when the Customer App sends a service request message to the Lyft Platform, the request contains its GPS coordinates that specifies for the Lyft Platform the radius of geographic region the Lyft Platform should search for the location of eligible candidate Driver Apps to receive invitations to accept the service request.

150.   Claim 4 requires: "iii) means to request that all portable remote units within said region (ii) establish their location at the network." Upon information and belief, the Accused Products and Services comprise and utilize means to request that all portable remote units within said region (ii) establish their location at the network.

151.   For example, in the Lyft Mobile Network, the online Driver Apps and active Customer Apps are programmed to periodically gather from their respective smartphones (or other portable communication devices) their GPS coordinates and any additional location information and to transmit those coordinates and other location information to the Lyft Platform. The Lyft Platform includes components/services that receive and process the GPS coordinates and other location information to establish the S2 geospatial and street location used by various components/services at the Lyft Platform.

152.   In particular, a match component/service of the Lyft Platform specifies a radius from the current location of the Customer App of a circular geographical search area and queries the S2 servers responsible for identifying the eligible Driver Apps located within the S2 geospatial cells comprising that area.

153.   Claim 4 requires: "iv) means to identify said request (iii) and verify at a portable mobile remote unit whether the portable remote unit exist within said region." Upon information and belief, the Accused Products and Services comprise and utilize means to identify said request (iii) and verify at a portable mobile remote unit whether the portable remote unit exists within said region.

154.   For example, the S2 servers identify when a request is made from the match system and return a list of eligible candidate servers to the match system. The match system processes the list to identify which candidates should receive invitations to accept the service based upon ETA and sends those to a notification component/system. The notification system sends the invitations to the Drivers Apps specifying the amount of payment, pickup location, destination location ETA to pickup location, and estimated ride duration. The Driver App, while in motion, updates and displays its location, in relation to the pickup region, confirming that it is within the region. Also, Lyft's system tracks geolocation changes, at the mobile device level, as it employs a data-rich platform to handle events, including geolocation coordinate changes, that are reported to a gateway service and sent to the system to be consumed by downstream services.

155.   Claim 4 requires: "v) means to provide to the wireless consumer the location information of a portable mobile remote unit that exist in the geographic boundary defined by the wireless consumer after the verification of (iv)." Upon information and belief, the Accused Products and Services comprise and utilize means to provide to the wireless consumer the location information of a portable mobile remote unit that exist in the geographic boundary defined by the wireless consumer after the verification of (iv).

156.   For example, the Lyft Platform sends back to the Customer App the locations of nearby Driver Apps located within the search radius of the Customer App's GPS coordinates, which are displayed by the user interface of the Customer App before the planned ride is ordered.

157.   Claim 6 recites: "[a] method for determining that a first portable mobile remote communication unit is tracking a second portable mobile remote communication unit while in motion." Upon information and belief, and to the extent that the preamble is limiting, the Accused Products and Services practice the recited method.

158.   For example, both an online Driver App and an active Customer App are portable remote communication units that are in motion during the ride pickup and during the ride. During the ride pickup phase and during the ride, the Lyft Platform verifies that the Customer App is tracking the Driver App that accepted the ride request by sending the Driver App's street location information to the Customer App. The Lyft Platform determines during the ride that the Driver App and Customer App are tracking each other by calculating that the GPS coordinates of the two reflect that they are substantially co-located.

159.   Claim 6 requires: "iv) [*sic*, (i)] obtaining the geographic location of the first and second portable communication units at intervals over a period of time." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

160.   For example, the Lyft Platform periodically obtains from the Customer App its GPS location coordinates when the Customer App is active, such as when the rider has opened the Customer App and is planning a ride or has made a ride request. As a further example, all active Driver and Customer App components transmit their respective GPS coordinates (along with identifying data) to the Lyft Platform periodically.

161.   Claim 6 requires: "v) [*sic*, (ii)] computing from said geographic location (i) whether the first and second portable communication units are maintaining relative proximity during said period of time." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method because the Lyft Platform receives location data indicating whether one or more Driver Apps were in close proximity to one or more Customer Apps at the beginning of a ride and were still in close proximity when the ride ended.

162.   For example, a ride verification component/service of the Lyft Platform compares these received GPS coordinates from ride pickup to ride drop-off to determine that the ride-providing Driver App and the ride-requesting Customer App have maintained their relative proximity. Amongst other reasons for such tracking, Lyft

determines if there is a time period for which the Customer App and Driver App have not maintained relative proximity. If so, the tracking component/service sends a notification to a Lyft representative who may then make inquiries to both driver and rider to ensure that the parties are safe. Another reason is to verify that the rider remained on the ride from pickup location to destination location for billing and historical/data analytic purposes.

163. Also, the Lyft Platform includes an algorithmic pricing component/system/service that factors in demand for rides and availability of drivers and provides data that can be sent to Driver Apps that indicates the geographic hotspots where people are most likely to need rides and bonuses available for entering those areas to encourage the nearby drivers to enter the hotspot's S2 geospatial cell.

164. Furthermore, the Lyft Platform includes a match component that determines a plurality of eligible Driver Apps that are in close proximity to a given plurality of Customer Apps requesting ride services to determine which ones of such Driver Apps should be invited to accept the ride services so as to minimize the overall wait time for that plurality of customers. The match component sends a message to a notification service that notifies the selected Driver Apps that they have been invited to accept the service request.

165. Claim 6 requires: "vi) [*sic*, (iii)] if the result of said computation (ii) indicates that relative proximity is maintained between the first and second portable communication units over said period of time, advising the system that the first portable mobile remote unit is tracking the second." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

166. For example, the Lyft Platform receives location data indicating whether one or more Driver Apps were in close proximity to one or more Customer Apps at the beginning of a ride and were still in close proximity when the ride ended.

167. For example, a ride tracking component (system/service) of the Lyft Platform compares the GPS coordinates of each service-providing Driver App with the

GPS coordinates of the corresponding service-requesting Customer App from at least the time of the start to the time of the end of the ride to determine that the two have remained substantially co-located during the time period. Amongst other reasons for such tracking, the Lyft Platform determines if there is an unscheduled time period for which the Customer App and Driver App have not maintained relative proximity. If so, that tracking component/service reports the deviation to a notification component/service that notifies a Lyft representative so they can investigate that the driver and rider are safe. Moreover, by tracking the relative proximity, the Lyft Platform confirms that the rider in fact took the paid-for ride in case of a later billing challenge. If the tracking server component/service determines from the GPS coordinate comparison that the two components have maintained their relative proximity until the ride ended at its intended destination, it reports the verification and tracking data of the successfully completed ride to at least a storage component in case later needed for law enforcement, billing, data analytic or other purposes.

168.   Also, upon information and belief, the Lyft Platform verifies that a ride-requesting Customer App and ride-providing Driver App are tracking each other during at least a pickup. Also, as previously disclosed, the Lyft Platform includes an algorithmic pricing component that factors in demand for rides and availability of drivers and establishes bonus zones by determining which Driver App is reporting its location within proximity of a geographic boundary or S2 geospatial cell associated with a customer to determine whether a hotspot is needed in that S2 geospatial cell.

169.   Claim 8 recites: "[a] communication system." Upon information and belief, and to the extent that preamble is limiting, the Accused Products and Services comprise and utilize a communication system.

170.   For example, the Lyft Mobile Network is a communication system that connects the Lyft Platform with Customer and Drivers Apps so that the Lyft Platform can transmit data to and receive data from the Customer and Driver Apps.

171.   Claim 8 requires: "i) a network of communication resources." Upon information and belief, the Accused Products and Services include a network of communication resources.

172.   For example, the Customer and Driver Apps are communication units that are adapted to communicate their GPS coordinates, messages and other data to the Lyft Platform and to receive GPS coordinates, messages and other data from the Lyft Platform. Moreover, the Lyft Mobile Network includes communication units such as wireless cell towers, servers, mobile remote units and GPS satellites utilized to provide the Accused Products and Services.

173.   Claim 8 requires: "ii) a pool of portable mobile remote units that are able to communicate with the network to establish their geographic location within the system." Upon information and belief, the Accused Products and Services comprise and utilize a pool of portable mobile remote units that are able to communicate with the network to establish their geographic location within the system.

174.   The Driver and Customer Apps communicate with cell phone towers and GPS satellites to establish their GPS coordinates and other location information and communicate such information to the Lyft Platform which then uses this information to establish the Driver App's S2 geospatial cell and street location.

175.   Claim 8 requires: "ii) [*sic,* iii)] means for a wireless consumer to specify and forward to the network, geographic boundary information describing a region within a coverage area of said network where a notification should be sent to one or more of said portable mobile remote units within said region." Upon information and belief, the Accused Products and Services comprise and utilize means for a wireless consumer to specify and forward to the network, geographic boundary information describing a region within a coverage area of said network where a notification should be sent to one or more of said portable mobile remote units within said region.

176.   For example, when planning or requesting a service, the Customer App sends to the Lyft Platform its GPS coordinates and other location information in an

appropriate notification indicating that the information is provided in a ride planning or ride service request. This information constitutes geographical boundary information because it specifies a geographical area where the Lyft Platform should search for eligible Drivers Apps who should be sent notifications of the service request inviting them to accept the service request. When the Lyft Platform receives the GPS coordinates and other location information in such a notification, it indicates to the Lyft Platform a region within the coverage area of the Lyft Mobile Network that must be searched for eligible Driver Apps that should be sent notifications of the requested service.

177.  Claim 8 requires: "iii) [*sic*, iv)] means to forward said notification to portable mobile remote units within said region." Upon information and belief, the Accused Products and Services comprise and utilize means to forward said notification to portable mobile remote units within said region. For example, when the Lyft Platform identifies Driver Apps that should be sent notifications of the requested service, it sends those service notifications to certain Driver Apps with low ETAs to the Customer App requesting the service.

178.  Claim 8 requires; "iv) [*sic*, v)] means to identify said notification (iii) at the portable mobile remote unit and means to verify whether the portable remote unit exists within said region (iii)." Upon information and belief, the Accused Products and Services comprise and utilize means to identify said notification (iii) at the portable mobile remote unit and means to verify whether the portable remote unit exists within said region (iii).

179.  For example, the Driver App includes a component/service that identifies (*e.g.*, by message type) it received a service notification message for display via the user interface. The Driver App also verifies that it located (and therefore exists) in the region of the request by calculating and/or displaying the ETA to the pickup location. The Lyft Platform also includes a match component/service that verifies during the match process that the portable remote unit exists in the region. Also, Lyft's system tracks geolocation changes, at the mobile device level (at least Driver App), as it

employs a data-rich platform to handle events, including geolocation coordinate changes, that are reported to a gateway service and sent to the system to be consumed by downstream services.

180.    Claim 12 recites: [a] a method for notifying portable mobile remote units within a geographic region in a wireless communication system." Upon information and belief, and to the extent the preamble is limiting, the Accused Products and Services practice a method for notifying portable mobile remote units within a geographic region in a wireless communication system. For example, the Lyft Platform sends notification messages to Driver Apps and Customer Apps.

181.    Claim 12 requires: "i) communicating with one or more portable mobile remote unit in a network to establish their geographic location within the system." Upon information and belief, the Accused Products and Services practice communicating with one or more portable mobile remote unit in a network to establish their geographic location within the system.

182.    For example, the Lyft Platform opens a communication channel with online Driver Apps and active Customer Apps that periodically transmit their GPS coordinates and other location information to the Lyft Platform. The Lyft Platform processes the received GPS coordinates and other location information to establish the respective S2 geospatial cell and street location of these Driver and Customer Apps.

183.    Moreover, the Driver and Customer Apps communicate with cell phone towers and GPS satellites to establish their geographic location within the system, such as GPS coordinates and other location information that the Lyft Platform uses to map to street locations.

184.    Claim 12 requires: "ii) specifying and forwarding to the network, geographic boundary information describing a region within a coverage area of said network where a notification should be sent to one or more of said portable mobile remote units within said region." Upon information and belief, the Accused Products and Services practice specifying and forwarding to the network geographic boundary information describing a region within a coverage area of said network where a

- 34 -

notification should be sent to one or more of said portable mobile remote units within said region.

185.   For example, when planning or requesting a service, the Customer App sends to the Lyft Platform its GPS coordinates and other location information in an appropriate notification indicating that the information is provided in a ride planning or ride service request. This information constitutes geographical boundary information because it specifies a geographical area where the Lyft Platform should search for eligible Drivers Apps who should be sent notifications of the service request inviting them to accept the service request. When the Lyft Platform receives the GPS coordinates and other location information in such a notification, it indicates to the Lyft Platform a region within the coverage area of the Lyft Mobile Network that must be searched for eligible Driver Apps that should be sent notifications of the requested service.

186.   Claim 12 requires: "iii) forwarding said notification to portable mobile remote units within said region." Upon information and belief, the Accused Products and Services practice the step of forwarding the notification to portable mobile remote units within said region.

187.   For example, when the Lyft Platform identifies Driver Apps that should be sent notifications of the requested service, it sends those service notifications to certain Driver Apps with low ETAs to the Customer App requesting the service.

188.   Claim 12 requires: "iv) identifying said notification (iii) at the portable mobile remote unit and verifying whether the portable remote unit exists within said region (iii)." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

189.   For example, the Driver App includes a component/service that identifies (*e.g.*, by message type) it received a service notification message for display via the user interface. The Driver App also verifies that it is located (and therefore exists) in the region of the request by calculating and/or displaying the ETA to the pickup location. The Lyft Platform also includes a match component/service that verifies

during the match process that the portable remote unit exists in the region. Also, Lyft's system tracks geolocation changes, at the mobile device level (at least Driver App), as it employs a data-rich platform to handle events, including geolocation coordinate changes, that are reported to a gateway service and sent to the system to be consumed by downstream services.

190. Also, during the time of the matching of Driver Apps and Customer App, the S2 servers at the Lyft Platform verify that the Driver Apps that are to be receiving service request notification messages are in the region of the requested service before sending the service notification messages.

191. Claim 13 adds to claim 12 the additional step of "responding to said notification if said portable mobile remote unit (iv) exist within the geographic boundary defined by said region." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

192. A Driver App accepting a service request sends a message to the Lyft Platform notifying at least one component/server at the Lyft Platform that the service request has been accepted. Furthermore, the Driver App sends another notification when the ride has begun. These notifications are only sent if the Driver App is located in the region of the request. Also, Lyft's system is known to track geolocation changes, at the mobile device level (at least Driver App), as it employs a data-rich platform to handle events, including geolocation coordinate changes, that are reported to a gateway service and sent to the system to be consumed by downstream services.

193. Upon information and belief, to the extent that it is not directly infringing any of the above identified claim of the '726 patent, Lyft has actively induced and is actively inducing others (such as Lyft drivers and Lyft riders) to infringe these claims under 35 U.S.C. 271(b) through the use of the Accused Products and Services.

194. Upon information and belief, to the extent that it is not directly infringing any of the above identified claim of the '726 patent, Lyft has contributed to and is

contributing to the infringement by others (such as Lyft drivers and Lyft riders) of these claims under 35 U.S.C. 271(c) through the use of the Accused Products and Services.

195.   Upon information and belief, since becoming aware of the '726 patent, Lyft has provided the Lyft Driver App, Customer App and Platform for use by others (such as Lyft drivers and Lyft riders) and encouraged, aided, or otherwise caused others to use the Accused Products and Services in the United States in a way that infringes at least above identified claims of the '726 patent.

196.   Upon information and belief, the Lyft Driver App and Customer App are not staple articles of commerce having no substantial non-infringing uses but rather are specifically intended for use in accessing and using the Accused Products and Services in a way that infringes at least the above identified claims of the '726 patent.

197.   Upon information and belief, Lyft directly infringes one or more claims of the '726 patent literally, or induces or contributes to direct infringement that is literal. Alternatively, to the extent that Lyft's direct infringement or induced or contributory infringement for any claim is not found to be literal, such claims are infringed under the doctrine of equivalents.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 6,756,918

198.   Enovsys repeats, realleges, and incorporates by reference the foregoing paragraphs of the Original Complaint as if fully set forth herein.

199.   The claims of the '918 patent are generally directed to beneficial methods and systems for providing the location of portable mobile devices in a geographic region of a wireless network that are maintaining close proximity to a wireless consumer.

200.   Upon information and belief, Lyft has directly infringed one or more claims of the '918 patent under 35 U.S.C. § 271(a) by, among other things, making, using, offering to sell, and/or selling in the United States products and services used by, or under the direction or control of, Lyft in practicing one or more claims of the

'918 patent, including, by way of example and without limitation, the Accused Products and Services.

201.   The Accused Products and Services infringe at least claims, 1, 2, 15, 22 and 24 of the '918 patent.

202.   Claim 1 recites: "a communication system." Upon information and belief, and to the extent that the preamble is limiting, the Accused Products and Services comprise and utilize a communication system.

203.   For example, the Lyft Mobile Network is a communication system that connects the Lyft Platform with Customer and Drivers Apps so that the Lyft Platform can transmit data to and receive data from the Customer and Driver Apps.

204.   Claim 1 requires: "a portable mobile remote unit." Upon information and belief, the Accused Products and Services comprise and utilize a portable remote unit.

205.   For example, each of the Driver Apps and Customer Apps are installed on smartphones or mobile devices and comprise portable remote units.

206.   Claim 1 requires: "a network of communication units." Upon information and belief, the Accused Products and Services comprise and utilize a network of communication units.

207.   For example, the Lyft Platform comprises communication units that send data to and receive data from each Driver App and Customer App. The Driver and Customer Apps enable the smartphones (or other communication devices) upon which they operate to send data to and receive data from the Lyft Platform via a cell phone service, the internet or another communication channel and also are communication units. As a further example, each of the Driver Apps and Customer Apps are programmed to enable wireless communication with the Lyft Platform via the portable remote devices (*e.g.*, smartphones). Each of these are "communication units." As a further example, the Customer Apps and Driver Apps are communication units that are adapted to communicate their GPS coordinates, messages and other data to the Lyft

Platform and to receive GPS coordinates, messages and other data from the Lyft Platform and utilized to provide the Accused Products and Service.

208.   Claim 1 requires: "means to obtain the location of the portable mobile remote unit." Upon information and belief, the Accused Products and Services comprise and utilize means to obtain the location of the portable mobile remote unit.

209.   For example, the Driver Apps are adapted to communicate their GPS coordinates and other location information to the Lyft Platform which then establishes its S2 geospatial and street location. The Lyft Platform is a transmitter within the network because it transmits data to both Customer Apps and Driver Apps.

210.   Moreover, the Driver and Customer Apps communicate with cell phone towers and GPS satellites to establish their geographic location within the system, such as GPS coordinates and other location information that the Lyft Platform uses to map to street locations.

211.   Claim 1 requires: "means to obtain geographic boundary information in order to disclose a global location at the network." Upon information and belief, the Accused Products and Services comprise and utilize means to obtain geographic boundary information in order to disclose a global location at the network.

212.   For example, the Lyft Platform includes one or more location components/services that receive a set of GPS coordinates and identify a corresponding geographic area (*e.g.*, S2 geospatial cell) and one or more match components/services that identify the S2 geospatial cells within a specified radius of any given set of GPS coordinates. Also, the Lyft Driver and Customer Apps routinely obtain and provide their location to Lyft's network.

213.   Claim 1 requires: "means to provide the location of the portable mobile remote unit to the network upon determination that the portable mobile remote unit is within the geographic boundary obtained at the network." Upon information and belief, the Accused Products and Services comprise and utilize means to provide the location

of the portable mobile remote unit to the network upon determination that the portable mobile remote unit is within the geographic boundary obtained at the network.

214.  For example, when the Lyft Platform receives a service request from a Customer App, such as a ride request, it parses the identifier of the Customer App and its current GPS coordinates. The request is routed to a match component of the Lyft Platform whose function is to match the request to proximate Driver Apps who are eligible to be notified of the request until one has accepted the request.

215.  In performing the match, the match system/service creates a circle of a given radius from the GPS coordinates of the request and identifies the various S2 geospatial cells comprising the area of the circle. The Lyft Platform's match service queries the S2 servers responsible for maintaining the current location and status of the Driver Apps currently reporting locations within each of those S2 geospatial cells in order to obtain therefrom a list of eligible Driver Apps.

216.  Likewise, upon information and belief, when a Driver App first logs in to the Lyft Platform, the Lyft Platform determines from the Driver App's reported GPS coordinates whether it is located in an S2 geospatial cell that is a covered area of the Lyft Mobile Network before allowing it to open a channel to periodically update the Lyft Platform of its location. Likewise for a Customer App logging in to the Lyft Platform.

217.  The Lyft Platform also requests all online Driver Apps and active Customer Apps to periodically update the Lyft Platform of their current GPS coordinates within every S2 geospatial cells covered by the Lyft Mobile Network. By design, these Apps update the Lyft Platform periodically with at least their current GPS position for the Lyft Platform to use and to convert to an S2 geospatial cell or a street location.

218.  Claim 1 requires: "means to determine and report to the system upon request that, another mobile remote unit of the network has tracked the portable mobile remote over a period of time." Upon information and belief, the Accused Products and Services comprise and utilize means to determine and report to the system upon request

that another mobile remote unit of the network has tracked the portable mobile remote over a period of time.

219.    For example, the Lyft Platform includes trip component/services that determine and report that the Driver App providing a ride and Customer App requesting the ride tracked each other during the ride by establishing that the Customer App and Driver App were substantially co-located from the start to the end of the ride. Also, for any given S2 geospatial cell, the Lyft Platform includes an algorithmic pricing component that factors in demand for rides and availability of drivers and establishes bonus zones by determining which online Driver Apps and Customer Apps, both of which are in motion, are maintaining their location in any given S2 geospatial cell to determine whether a hotspot is needed in that S2 geospatial cell.

220.    Also, the Lyft Platform includes an algorithmic pricing component/system/service that factors in demand for rides and availability of drivers and provides data that can be sent to Driver Apps that indicates the geographic hotspots where people are most likely to need rides and bonuses available for entering those areas to encourage the nearby drivers to enter the hotspot's S2 geospatial cell.

221.    Furthermore, the Lyft Platform includes a match component that determines and reports a plurality of eligible Driver Apps that are in close proximity to a given plurality of Customer Apps requesting ride services. That way, it can access which Driver Apps should be invited to accept the ride services so as to minimize the overall wait time for that plurality of customers. The match component sends a message to a notification service that notifies the selected Driver Apps that they have been invited to accept the service request.

222.    Claim 2 requires "[t]he portable remote [unit] according to claim 1, having means to further determine if location disclosure for the remote unit is prohibited at a specific boundary before sending its location to the network." Upon information and belief, the Accused Products and Services comprise and utilize portable remote units having means to further determine if location disclosure for the remote unit is prohibited at specific boundary before sending its location to the network.

223.   For example, upon information and belief, each Customer App and Driver App is programmed to receive a message from the Lyft Platform confirming that it is located at a GPS coordinate within an S2 cell comprising a covered region of the Lyft Mobile Network before establishing a connection with the Lyft Platform to continue to periodically transmit to the Lyft Platform its GPS coordinates.

224.   Claim 15 recites: "[a] method for determining that a first portable remote unit of a wireless consumer associated with a network is being tracked by at least a second portable remote unit that is in motion with the first portable remote unit over a tracking period." Upon information and belief, and to the extent that the preamble is limiting, the Accused Products and Services practice a method for determining that a first portable remote unit of a wireless consumer associated with a network is being tracked by at least a second portable remote unit that is in motion with the first portable remote unit over a tracking period.

225.   For example, during a ride, the Lyft Platform determines that the GPS coordinates of a service-providing Driver App are being tracked by the GPS coordinates of the service-requesting Customer App from at least the time of pickup at the pickup location to the time of drop off at the destination location.

226.   Furthermore, the Lyft Platform confirms that the GPS coordinates of the service-providing Driver App are sent to the service-requesting Customer App, and vice versa, from the time the Driver App sent a message to the Lyft Platform accepting the service request to the time of the pickup at the pickup location.

227.   Furthermore, the Lyft Platform confirms that the GPS coordinates of the service-providing Driver App are sent to the service-requesting Customer App for the entire duration of the ride from the time the Driver App sent a message to the Lyft Platform accepting the service request to the time of the drop off at the drop off location.

228.   Claim 15 requires: "i) obtaining the location information of the first portable mobile remote unit, said location information provided at intervals during said tracking period." Upon information and belief, the Accused Products and Services

practice obtaining the location information of the first portable mobile remote unit, said location information provided at intervals during said tracking period.

229.  For example, the Lyft Platform periodically obtains the location of the Driver Apps that are in covered service areas of the Lyft Mobile Network and connected with the Lyft Platform (*i.e.*, online), including from the time a Driver App reports to the Lyft Platform that it has accepted a ride service invitation from the Lyft Platform to the time the ride has ended.

230.  Claim 15 requires: "ii) obtaining the location information of the at least second portable communication unit that is within a specified geographic boundary of the first portable remote unit, said location information provided at intervals during said tracking period." Upon information and belief, the Accused Products and Services practice obtaining the location information of the at least second portable communication unit that is within a specified geographic boundary of the first portable remote unit, said location information provided at intervals during said tracking period.

231.  For example, the Lyft Platform also periodically obtains the location of Customer Apps that are planning or have requested a trip, including from the time a Driver App has accepted their service request to the time of the drop off at the destination location of the service request. Moreover, the Lyft Platform only sends service invitations to Drivers Apps that are located within a specific geographic boundary (*e.g.*, a circle of a given radius of the GPS coordinates) of a service-requesting Customer App.

232.  Claim 15 requires: "iii) using the location obtained according to step (i) and (ii) to verify whether the first portable remote unit and second portable remote unit have maintained relative proximity during the tracking period." Upon information and belief, the Accused Products and Services practice this claimed step of the recited method.

233.  For example, the Lyft Platform includes a ride verification component that compares the GPS coordinates periodically received from the service-providing Driver App with the GPS coordinates periodically received from the service-requesting

Customer App during a ride from at least the time of pick up at the pickup location to the time of drop off at the destination location to verify that the two have remained in relative proximity for the duration of the ride.

234.   Claim 15 requires: "iv) forwarding the result of the verification to a network requestor at the end of the tracking period." Upon information and belief, the Accused Products and Services practice forwarding the result of the verification to a network requestor at the end of the tracking period.

235.   Claim 22 recites: "a communication system." Upon information and belief, and to the extent the preamble is limiting, the Accused Products and Services comprise and utilize the Lyft Mobile Network, a communication system in which Driver Apps and Customer Apps communicate with the Lyft Platform.

236.   Claim 22 requires: "(i) a network of communication units." Upon information and belief, the Accused Products and Services comprise and utilize a network of communication units.

237.   For example, each of the Driver Apps and Customer Apps are programmed to enable wireless communication with the Lyft Platform via the portable remote devices (*e.g.*, smartphones) onto which they are installed. Each of these are "communication units."

238.   Claim 22 requires: "(ii) at least a first communication unit and at least a second communication unit able to provide location information to the network for a time while in motion." Upon information and belief, the Accused Products and Services comprise and utilize at least a first communication unit and at least a second communication unit able to provide location information to the network for a time while in motion.

239.   For example, both the ride-providing Driver App and ride-requesting Customer App periodically report their GPS coordinates to the Lyft Platform during a ride from the time the ride was accepted to the time of drop-off.

240.   Claim 22 requires: "(iii) means to request whether the at least second communication unit is tracking the at least first communication unit." Upon

information and belief, the Accused Products and Services comprise and utilize means to request whether the at least second communication unit is tracking the at least first communication unit.

241.   For example, the Lyft Platform includes a trip component/service that monitors the reported GPS coordinates of both the ride-providing Driver App and ride-requesting Customer App during a ride. The Lyft Platform also includes at least one safety or billing component/service that requests the trip component to report whether or not the two GPS components are tracking each other during the ride.

242.   Also, for any given S2 geospatial cell, the Lyft Platform includes an algorithmic pricing component that factors in demand for rides and availability of drivers and establishes bonus zones by determining which online Driver Apps and Customer Apps, both of which are in motion, are maintaining their location in any given S2 geospatial cell to determine whether a hotspot is needed in that S2 geospatial cell. Furthermore, the Lyft Platform includes a match component that needs to know which plurality of eligible Driver Apps are in close proximity to a given plurality of Customer Apps requesting ride services. That way, it can determine which Driver Apps should be invited to accept the ride services so as to minimize the overall wait time for that plurality of customers.

243.   Claim 22 requires: "(iv) means to determine from said location provided (ii) that the at least first and second communication unit maintained proximity while in motion during said time." Upon information and belief, the Accused Products and Services include means to determine from said location provided (ii) that the at least first and second communication unit maintained proximity while in motion during said time.

244.   For example, the Lyft Platform receives location data indicating whether one or more Driver Apps were in close proximity to one or more Customer Apps at the beginning of a ride and were still in close proximity when the ride ended and includes a trip component/service that is able to compare the reported GPS coordinates of the

Driver App and Customer App during a ride to verify that the Driver App and Customer App are substantially co-located during the ride.

245. Also, the Lyft Platform includes an algorithmic pricing component/system/service that factors in demand for rides and availability of drivers and provides data that can be sent to Driver Apps that indicates the geographic hotspots where people are most likely to need rides and bonuses available for entering those areas to encourage the nearby drivers to enter the hotspot.

246. Furthermore, the Lyft Platform includes a match component that determines a plurality of eligible Driver Apps that are in close proximity to a given plurality of Customer Apps requesting ride services to determine which ones of such Driver Apps should be invited to accept the ride services so as to minimize the overall wait time for that plurality of customers. The match component sends a message to a notification service that notifies the selected Driver Apps that they have been invited to accept the service request.

247. "Claim 22 requires: "(vi) [*sic*, v)] means to provide result of the determination (iv) to the requestor of (iii)." Upon information and belief, the Accused Products and Services comprise and utilize means to provide result of the determination (iv) to the requestor of (iii).

248. For example, the trip component/service can provide the results of the verification to the safety or billing component/service. Also, the algorithmic pricing component and match component provide their results to the Lyft Platform, so appropriate notifications/alerts can be sent to the Driver and Customer Apps.

249. "Claim 24 requires: "[t]he system of claim 22 having means to maintain an inventory of all second communication units that are providing their location within proximity to the first communication unit during said time and having further means to determine and report a second communication unit in said inventory that has maintained proximity to the first communication unit during said time." Upon information and belief, the Accused Products and Services comprise and utilize means

to maintain an inventory of all second communication units that are providing their location within proximity to the first communication unit during said time and having further means to determine and report a second communication unit in said inventory that has maintained proximity to the first communication unit during said time.

250.   For example, the Lyft Platform includes a location component/service that maintains on various servers the current locations of each online Driver App in any given geographic area (*e.g.*, S2 geospatial cell or sub-cell) covered by the system and determines and reports to a match service one or more Driver Apps that have maintained proximity to a Customer App requesting a ride service. Also, as previously disclosed, the trip component/service and the algorithmic pricing component/service obtain information from the system indicating which Driver App is reporting their location within proximity of a geographic boundary or S2 cell of the Customer App.

251.   Upon information and belief, to the extent that it is not directly infringing any of the above identified claim of the '918 patent, Lyft has actively induced and is actively inducing others (such as Lyft drivers and Lyft riders) to infringe these claims under 35 U.S.C. 271(b) through the use of the Accused Products and Services.

252.   Upon information and belief, to the extent that it is not directly infringing any of the above identified claim of the '918 patent, Lyft has contributed to and is contributing to the infringement by others (such as Lyft drivers and Lyft riders) of these claims under 35 U.S.C. 271(c) by using the Accused Products and Services.

253.   Upon information and belief, since becoming aware of the '918 patent, Lyft has provided the Lyft Driver App, Customer App and Platform for use by others (such as Lyft drivers and Lyft riders) and encouraged, aided, or otherwise caused others to use the Accused Products and Services in the United States in a way that infringes at least above identified claims of the '918 patent.

254.   Upon information and belief, the Lyft Driver App and Customer App are not staple articles of commerce having no substantial non-infringing uses but rather are

specifically intended for use in accessing and using the Accused Products and Services in a way that infringes at least the above identified claims of the '918 patent.

255.   Upon information and belief, Lyft directly infringes one or more claims of the '918 patent literally, or induces or contributes to direct infringement that is literal. Alternatively, to the extent that Lyft's direct infringement or induced or contributory infringement for any claim is not found to be literal, such claims are infringed under the doctrine of equivalents.

## PRAYER FOR RELIEF

WHEREFORE, Envosys respectfully prays for the following relief:

(a) A judgment that Lyft is liable for infringing and willfully infringing the patents-in-suit;

(b) An award of all damages sufficient to fully compensate Envosys for past infringement, up until entry of the final judgment, by Lyft under 35 U.S.C. § 284;

(c) Enhancement of damages under 35 U.S.C. § 284;

(d) A judgment requiring Lyft to pay Envosys pre-judgment interest on the damages awarded; and

(e) An award of attorney fees under 35 U.S.C. § 285.

## JURY DEMAND

Envosys requests a trial by jury on all issues so triable.

DATED: October 10, 2023

By: */s/ Sandeep Seth*
Sandeep Seth (CA State Bar No. 195914)
Email:  ss@sethlaw.com
SETHLAW PLLC
Pennzoil Place
700 Milam Street, Suite 1300
Houston, Texas 77002
Tel: (713) 244-5017

- 48 -

Fax: (713) 244-5018


Stanley H. Thompson, Jr. (CA State Bar No. 198825)
E-mail: stan@thompsontechlaw.com
THOMPSON TECHNOLOGY LAW
655 N. Central Ave., 17th Floor
Glendale, CA  91203
Tel: (323) 409-9066


*Attorneys for Plaintiff*
Enovsys LLC

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO. 5:23-cv-05157