Sandeep Seth (CA State Bar No. 195914)
Email:  ss@sethlaw.com
SETHLAW PLLC
Pennzoil Place
700 Milam Street, Suite 1300
Houston, Texas 77002

Tel: (713) 244-5017
Fax: (713) 244-5018

Stanley H. Thompson, Jr. (CA State Bar No. 198825)
E-mail: stan@thompsontechlaw.com
THOMPSON TECHNOLOGY LAW
655 N. Central Ave., 17th Floor
Glendale, CA  91203

Tel: (323) 409-9066

*Attorneys for Plaintiff*
Enovsys LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ENOVSYS LLC,<br><br>                Plaintiff,<br><br>        v.<br><br>LYFT, INC.,<br><br>                Defendant. | Case No.: 5:23-cv-05157-EJD<br><br>**OPPOSITION TO LYFT, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1

2

## TABLE OF CONTENTS

3

I.    INTRODUCTION ..................................................................................................- 1 -

II.   BACKGROUND ...................................................................................................- 2 -

   A. The Patents-in-Suit Are Directed to Systems and Methods that Improve the Efficiency of
      Location Tracking in Wireless Networks .......................................................... - 2 -

   B. The Patents Claim Disparate Techniques for Reducing Network Processing In Making
      Tracking and Proximity Determinations..........................................................- 4 -

      1.  The '918 Patent Claims (Exemplary)............................................................ - 4 -

      2.  The '752 Patent Claims (Exemplary)............................................................ - 5 -

      3.  The '726 Patent Claims (Exemplary)............................................................ - 6 -

III.  LEGAL STANDARDS .........................................................................................- 7 -

   A. Federal Rule of Procedure 12(b)(6) ..................................................................- 7 -

   B. Direct Infringement.............................................................................................- 7 -

   C. Patent-Eligibility Under 35 U.S.C. § 101 .........................................................- 8 -

IV.   DISCUSSION .......................................................................................................- 9 -

   A. Enovsys Plausibly Alleges Direct Infringement By Lyft ................................- 9 -

   B. Enovsys' Complaint Plausibly Alleges Infringement By Lyft .....................- 11 -

   C. The Asserted Claims Are Not Abstract ..........................................................- 13 -

      1.  The '752 Patent Claims Pass Step One ..................................................... - 14 -

      2.  The '918 Patent Claims Pass Step One ..................................................... - 14 -

      3.  The '726 Patent Claims Pass Step One ..................................................... - 14 -

   D. Lyft's Step One Arguments and Analogies Incorrectly Describe The Asserted Claims And
      Do Not Follow The Law ...................................................................................- 15 -

      1.  The Analysis That Claim 15 Is Abstract Is Flawed .................................. - 15 -

      2.  Lyft Incorrectly Ignores Limitations Of Other Asserted Claims ............ - 19 -

   E. The Claims Pass Step Two ...............................................................................- 21 -

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

F.  Lyft's Motion to Dismiss Is Ill-Timed Because Claim Construction and A Fulsome Record Is Needed ........................................................................................................- 24 -

**V.   CONCLUSION ...........................................................................................- 25 -**

1

## <u>TABLE OF AUTHORITIES</u>

2

3 <u>**Cases**</u>                                                                                                          <u>**Page(s)**</u>

4   *Aatrix Software, Inc. v. Green Shades Software, Inc.,*
    882 F.3d 1121 (Fed. Cir. 2018) ............................................................................................ 24
5

6   *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (S.Ct. 2014) ........................................................................................... passim
7

8   *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.,*
    841 F.3d 1288 (Fed. Cir. 2016) ....................................................................................... 18, 19

9   *Ameritox, Ltd. v. Millenium Health,* LLC,
    2015 WL 728501 (W.D. Wis. Feb. 19, 2015) ....................................................................... 25
10

11  *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada,*
    687 F.3d 1266 ....................................................................................................................... 25
12

13  *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) ...................................................................................... passim

14  *Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ................................................................................... 8, 9, 25
15

16  *Cellspin Soft, Inc. v. Fitbit Inc.,*
    927 F.3d 1306 (Fed. Cir. 2019) ............................................................................................ 7, 8

17  *Chavez v. United States,*
    683 F.3d 1102 (9th Cir. 2012) ................................................................................................ 7
18

19  *DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ...................................................................................... passim
20

21  *Deston Therapeutics LLC v. Trigen Labs Inc.,*
    723 F. Supp. 2d 665 (D. Del. 2010) ...................................................................................... 24

22  *Diamond v. Diehr,*
    450 U.S. 175 (1981) ......................................................................................................... 8, 15
23

24  *Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2018) ...................................................................................... passim
25

26  *Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016) ...................................................................................... passim
27

28  *Heliotrope General, Inc. v. Ford Motor Co.,*
    189 F.3d 971 (9th Cir. 1999) .................................................................................................. 7

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.,*
   50 F.4th 1371 (Fed. Cir. 2022) ............................................................... , 17, 18, 19

*Linquet Techs., Inc. v. Tile, Inc.,*
   559 F. Supp. 3d 1101 (N.D. Cal. 2021) ........................................................ 18, 19, 20

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.,*
   324 F.3d 1308 (Fed. Cir. 2003) ............................................................................... 24

*McRO, Inc. v. Bandai Namco Games Am., Inc.,*
   837 F.3d 1299 (Fed. Cir. 2016) ........................................................................ passim

*Mediran v. International Ass'n of Machinists and Aerospace Workers,*
   2011 WL 2746601 (N.D. Cal. July 14, 2011) ........................................................... 7

*Microsoft Corp. v. i4i Ltd. P'ship,*
   564 U.S. 91 (2011) ................................................................................................... 9

*Starz Entm't, LLC v. MGM Domestic Television Distribution, LLC,*
   39 F.4th 1236 (9th Cir. 2022) ................................................................................... 7

*Weisner v. Google LLC,*
   51 4th 1073 (Fed. Cir. 2022) ........................................................................ 17, 18, 19

*Wireless Discovery LLC v. Coffee Meets Bagel, Inc.,*
   No. 22-478-GBW, 2023 U.S. Dist. LEXIS 19203 (D. Del. Feb. 6, 2023) .............................. 20

## **Statutes**

35 U.S.C. § 101 ......................................................................................... passim

35 U.S.C. § 112(f) ............................................................................................ 24

## **Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 7, 25

Fed. R. Civ. P. 12(c) ........................................................................................... 7

Plaintiff Enovsys LLC ("Enovsys") submits this response in opposition to Defendant Lyft, Inc.'s ("Lyft's") Motion to Dismiss Plaintiff's Complaint (Dkt. 24) ("Mot.").

## I.      INTRODUCTION

Lyft incorrectly contends that Enovsys has not properly pleaded direct infringement against Lyft.  Enovsys shows below that the allegations of the Complaint map the limitations of the asserted claims to actions attributable to Lyft.  Furthermore, the allegations of the Complaint go far beyond a mere recitation that the claim language has been performed by Lyft, and adequately give notice of specific acts and systems giving rise to a plausible claim of infringement by Lyft. These grounds for Lyft's Motion should be rejected.

Lyft also contends that, based upon 35 U.S.C. § 101, all the claims of the three patents-in-suit are patent ineligible because they are each directed to an abstract idea, and none involve any "inventive concept." Lyft further asserts that a single claim, claim 15 of U.S. Patent No. 6,756,918 ("'918 patent") is representative of every claim of all three patents and therefore no independent analysis of each claim was necessary.  These grounds for Lyft's Motion should also be rejected because neither proposition is correct.

The patents-in-suit recognized that wireless communication networks would soon support the ability for third parties to request a geographic location of a mobile device and sought to leverage that ability with novel systems and methods employing several improvements to conventional communication network architecture to solve problems specific to wireless network that included such an ability.  These solutions involve efficiently processing requests from a mobile device for the locations of other mobile devices and to make proximity and tracking determinations between two mobile devices in the network using geographic, time, distance and velocity parameters.  The patents-in-suit recognize that location enabled networks can easily become overloaded with making such types of determinations, and disclose systems and methods to reduce the amount of processing needed to make these determinations.

The Asserted Claims provide technical solutions to technical problems unique to wireless networks that are attempting to make such determinations and provide the network with a novel ability to discover that one device is potentially tracking another by analyzing the various

- 1 -

parameters. Accordingly, the Court should deny Lyft's Motion and hold that the Complaint adequately pleads a plausible claim of infringement by Lyft, and also that the asserted claims are directed at patent-eligible subject matter in accordance with 35 U.S.C. § 101 that involve more than well-understood, routine, and conventional activities.

## II.     BACKGROUND

### A.  The Patents-in-Suit Are Directed to Systems and Methods that Improve the Efficiency of Location Tracking in Wireless Networks

Enovsys asserts three of its patents in the complaint against Lyft: U.S. Patent Nos. 6,441,752 ("'752 patent") and 7,199,726 ("'726 patent"), and the aforementioned '918 patent (collectively, "patents-in-suit"). Each patent is titled "Method and Apparatus for Locating Mobile Units Tracking Another or Within a Prescribed Geographic Boundary." (Complaint, Exs. A-C.) The improvements of the patents-in-suit, in view of the anticipated deployment of location based services technology within the telecommunication industry, included new communication network architecture and algorithms to (a) request or receive the geographic location of a mobile device in its network at intervals for a period of time; (b) receive and fulfill requests from third-party requestors for the locations of other mobile device within specified geographic areas; and (c) make proximity or tracking determinations between two mobile devices in the network using geographic, time, distance and velocity parameters to filter the reported locations used in making such determinations, including employing sub-regions and exclusion regions.[1] The specification

_____

[1] Even the ability to request the location of a wireless mobile device was not generally available to the public at the time of the inventions. *See*, Exhibit A, Declaration of Joseph C. McAlexander III, Doc. 38-2, Civil Action No. 2:21-cv-00368-JRG, ¶10 fn 1 (discussing the FCC's 1996 mandate giving wireless carriers until 2001 to implement a system that could report the location of mobile devices to third parties in an emergency scenario). To meet that mandate, 12 of the largest wireless carriers formed the Location Interoperability Forum in 2000 to formulate standards to request the location of a portable mobile device within a carrier's network that could be implemented within the industry.

*See* https://www.openmobilealliance.org/tech/affiliates/lif/boilerplate.pdf.

recognizes that information about these parameters can reveal information about potential tracking and discloses ways to use it. The specification also anticipates problems and provides specific solutions for telecommunication systems that obtain the location of millions of mobile devices from third parties and further discusses (i) safety and technical issues after such a system is deployed and (ii) the technical advantages of an improved telecommunication system and methods that satisfy requests for the location of a specific mobile device in a way that does not overload the system as would happen if the entire unfiltered scope of mobile devices were processed.

As the patents-in-suit recognize, the "wireless industry is currently gearing towards the provision of a wide range of location-based services to the general public" and "such services will include utilizing the location of a subscriber's portable remote unit to channel a wide range of location-based services to the subscriber." ('918 patent at 1:17-21.)[2] Accordingly, the patents-in-suit disclose a need to use such an improved system not only for safety reasons but to prevent network overloading and power consumption of location enabled devices. *See, e.g.*, '918 patent, 2:49-58; 3:50-57; 6:48-58 (describing the method at 5:49-6:47 and Fig. 5); 7:22-29; 11:9-25.

The specification also describes other processing techniques in determining whether one portable unit in the network is maintaining proximity to another "only after both units have traveled a certain distance over a pre-specified period of time with the tracking unit maintaining proximity to the source during that period" and that "such distances and elapsed times could be set as a standard by the industry to clearly define tracking." (*Id.*, 2:42-49.) The specification also discusses the technical benefits of using geographic boundaries and exclusion regions in a system that seeks to fulfill location requests in targeted geographic boundaries within such a telecommunication system to improve network efficiency. (*See, e.g.,* '918 patent, 10:2-20.) The specification describes specific methods to determine which geographic boundary a specific mobile device was actually located in order to ameliorate overloading and conserve storage space. (*See, e.g.,* '918 patent, 6:48-64, 11:7-31 & Figs. 1 and 3.)

Thus, the disclosed improved communication networks and system are designed to

---

[2] All patent specification citations herein are to the '918 patent.

overcome certain technical and safety (*i.e.*, clandestine devices hidden out of plain view to track a user) pitfalls in networks of deployed location enabled devices.  (*See* '918 patent, Abstract, 1:66-2:16, 5:17-7:64.)

### B.  The Patents Claim Disparate Techniques for Reducing Network Processing In Making Tracking and Proximity Determinations[3]

#### 1.  The '918 Patent Claims (Exemplary)[4]

Claim 1 of the '918 patent recites "[a] communication system" comprising "means to obtain the location of the portable remote unit." It also requires "**means to obtain geographic boundary information in order to disclose a global location at the network**" and "means to provide the location of the portable mobile remote unit to the network **upon determination that the portable mobile remote unit is within the geographic boundary obtained at the network**." These geographic and location parameters are an embodiment of the technique to limit burden on the network by reducing the scope of data being analyzed. Finally, claim 1 requires "**means to determine and report to the system upon request that, another mobile remote unit of the network has tracked the portable mobile remote over a period of tim**e."[5]  This limitation is directed to using a minimum time as a filter in computing correlations between device locations in order to determine that one is tracking another.  This prevents the system from wasting resources on further processing or reporting false positives.

Claim 2 adds that the portable remote unit of claim 1 have "means to further determine if l**ocation disclosure for the remote unit is prohibited at a specific geographic boundary before sending its location to the network.**"  Claim 3 adds that the portable remote unit of claim 1 "have means to e**stablish its velocity at the network and having means to further determine that, its**

---

[3] Exhibit B shows various exemplary asserted and non-asserted claims of this patent.

[4] Claim 1 is only exemplary of other claims in the '918 patent.  Enovsys disputes that claim 15 of the '918 patent is representative of all claims in all of the patents-in-suit.

[5] Even in the absence of Lyft's claim construction proposals for such terms, the differences between the claims are material to the step one and step two analysis and no one claim should be treated as representative of the others during that part of the analysis.

OPPOSITION TO MOTION TO DISMISS                                          CASE NO. 5:23-cv-05157-EJD

**velocity is within the network's prescribed velocity before divulging its location to the network.**[6]   These claims capture embodiments that factor in additional parameters to reduce system overload by only processing location information in defined circumstances.

Asserted Claim 4 similarly captures the use of "geographic boundary information describing the geographic region where the location of portable mobile remote units are required by the wireless consumer" to limit the scope of data processed.   It further requires "**means to request that all portable remote units within said geographic boundary** (i) establish their location at the network," but limits that by including "**means to verify at a portable remote unit if the portable remote unit is within said geographic boundary** of said request (ii) **before establishing the location of the portable remote unit at the network**." Thus, not only does this system have a mechanism in which to request all portable units within a specified area provide their location but also devices outside the boundary do not unnecessarily report, which conserves resources by minimizing data processing.

Claim 6 adds "means to split wider geographic boundaries defined by a wireless consumer into sub regions and further means to recursively request for the location of portable mobile remote units within each subregion until a portable mobile remote unit responds with location information." This is directed to a disclosed embodiment of querying smaller regions first, then expanding them, again to conserve resources to reduce data processing.

Claim 15 of the '918 patent is clearly not representative even of other asserted claims of this patent, much less of all its claims.   A chart highlighting the significant differences in methods and structures between the various and disparate representative claims of the patents-in-suit is attached as Exhibit B.

## 2. The '752 Patent Claims (Exemplary)

Asserted claim 1 of the '752 patent is also directed to the efficient methods discussed

---

[6] Claim 3 is not asserted claims but Lyft seeks dismissal of the Complaint because it asserts all claims of each of the patents-in-suit are invalid under 35 U.S.C. § 101.  Envoys will not address every claim, but just a sampling to show the various and disparate systems and methods claimed therein.

above. Claim 1's requirements of "obtaining the location of the wireless consumer at intervals over a period of time" and requesting location information "at each interval" from "all mobile remote units within close proximity of the wireless consumer" is directed to the conservation of resources by focusing on mobile remote units reporting locations in a certain geographic region. The requirement of "maintaining a list of mobile remote units that provided their location at each interval" and "forwarding the location of at least a mobile remote unit to the mobile consumer **upon determination that the remote unit maintained close proximity** to the mobile consumer over the period of time" is directed to conserving resources by determining which units on the list maintained close proximity to the mobile consumer.  Claim 3's "estimating at the remote unit if the current location of the remote unit is within the geographic boundary obtained at the network" is also directed to the conservation of resources by focusing on the reported locations in a certain region.

Claim 4 recites the limitation of "exclusion region information" that is used to limit location reporting only to devices outside the exclusion region, which conserves resources.

Claim 6's requirements of splitting a geographic area into "sub geographic regions" and "maintaining a list" of devices that reported locations in a sub region is directed to the goal of conserving resources by generating narrower subsets of devices out of the whole.

Claim 7 adds to claim 6 a technique "to terminate a request for the location information of remote units in the prescribed geographic boundary" when it is established that all sub regions have been queried. This conserves resources by not prolonging the sending of location requests and the subsequent processing of the reported locations in the specified geographic boundaries.

### 3.   The '726 Patent Claims (Exemplary)

Asserted Claim 1 of the '726 patent is also directed to the efficient methods discussed above. Claim 1's requirement of a "geographic boundary that is prescribed within the coverage area" is directed to the conservation of resources by focusing on a certain region. Claim 1 also requires "means to determine and report to the system that, another mobile remote unit has maintained relative proximity to the portable mobile remote **over a period of time while in motion**." This limitation is also directed to the ability to reduce processing and efficiently compute correlations between device locations in order to determine that one is tracking another.

Asserted claim 8 of the '726 patent is also directed to the efficient methods discussed above. Claim 8's requirements of "**means for a wireless consumer to specify and forward to the network, geographic boundary information describing a region within a coverage area of said network where a notification should be sent to one or more of said portable mobile remote units within said region**" is directed to the conservation of resources by focusing on a certain region so that notifications are not unnecessarily sent to a voluminous set of devices.

### III.   LEGAL STANDARDS

#### A.  Federal Rule of Procedure 12(b)(6)

When considering a Rule 12(b)(6) motion a court must "accept all well-pleaded factual allegations contained in the complaint as true." *Starz Entm't, LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1239 (9th Cir. 2022). The standard for a Rule 12(b)(6) motion is essentially the same as that for a Rule 12(c) motion. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). "[A]ll reasonable inferences" must be made "in favor of the nonmoving party." *Mediran v. International Ass'n of Machinists and Aerospace Workers*, 2011 WL 2746601, at *2 (N.D. Cal. July 14, 2011). "When considering a motion for judgment on the pleadings, this court may consider facts that 'are contained in materials of which the court may take judicial notice.'" *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (citation omitted).

#### B.  Direct Infringement

"[A]n entity [is] responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Cellspin Soft, Inc. v. Fitbit, Inc.*, et al, No. 4:17-CV-05928-YGR, 2022 U.S. Dist. LEXIS 129030, at *29-30 (N.D. Cal. June 7, 2022). Infringement under the former exists "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* "The Federal Circuit instructs courts to look for evidence that a third party hoping to obtain access to certain benefits can only do so if it performs certain steps identified by the defendant, and does so under the terms prescribed by the defendant." *Id.* Moreover, "the entity does not have to have physical control over all elements of a system to use a system." *Ameranth,*

*Inc. v. Pizza Hut, Inc.*, 3:11-cv-1810, Doc. 416 at 7 (S.D. Cal. Aug. 15, 2011).

### C.  Patent-Eligibility Under 35 U.S.C. § 101

The Supreme Court has established a two-step framework for patent eligibility under 35 U.S.C. § 101. First, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 573 U.S. 208, 134 S. Ct. 2347, 2355 (2014). The "directed to inquiry" is a "meaningful one" and "cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (2016). "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Id.*

Second, if the claims are directed to patent-ineligible subject matter, the Court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* The Supreme Court has described this as a "search for an 'inventive concept'— i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.*

When assessing patent protection under § 101, the claims of the patent "must be considered as a whole." *Diamond v. Diehr*, 450 U.S. 175, 188 (1981). "This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." *Id.* When evaluating a motion to dismiss based on 35 U.S.C. § 101, whether claims embody a patent-eligible application of an abstract idea is a question of law; however, whether the claims at issue involve more than well-understood, routine, and conventional activities is a factual question. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

The presumption of validity afforded issued U.S. patents extends to patent-eligible subject matter. *See Cellspin Soft, Inc. v. Fitbit Inc*., 927 F.3d 1306, 1319 (Fed. Cir. 2019) ("This presumption reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies 'the prerequisites for issuance of a patent,' including § 101.") (quoting

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95-96 (2011)). Generally, overcoming the presumption of validity in a district court requires clear and convincing evidence. *Microsoft*, 564 U.S. at 95. In the context of § 101 eligibility, the Federal Circuit has held that the second part of Alice's two-step inquiry should be assessed according to the clear and convincing evidence standard. *Berkheimer*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## IV.   DISCUSSION

### A.  Enovsys Plausibly Alleges Direct Infringement By Lyft

Enovsys' direct infringement allegations against Lyft plausibly detail how instrumentalities controlled by Lyft meet the claim limitations. Lyft's arguments to the contrary are erroneous. For example, Lyft critiques the factual allegations of claim 1 of the '726 patent because they purportedly allege actions by parties other than Lyft. (Mot. at 7-8.) Lyft argues that the Lyft Platform, Customer App, Driver App, and Lyft Mobile Network are accused of meeting different limitations. But all of these instrumentalities are alleged to be controlled by and/or provided by Lyft *vis à vis* the claim limitations.

Paragraphs 18 through 52 of the Complaint state general allegations about Lyft that are incorporated by reference in each of the counts in the Complaint. For example, Enovsys alleges that Lyft has infringed by "making, using, offering for sale, and/or selling within the United States *certain products and services* which embody, or in combination embody, one or more claims of the patents-in-suit." (Complaint ¶ 18 (emphasis added).) In ¶ 19,[7] Enovsys further alleges that the "products and services" include "ride services provided via the Lyft Mobile Network, including servers at the Lyft Platform wirelessly connected to Lyft's Driver Applications and Lyft Customer mobile device applications on iOS, Android, and Microsoft operating systems (respectively, "Driver App" and "Customer App"), as well as the various Lyft ride service, ride-sharing, car-pooling, and delivery services provided therethrough (collectively, the 'Accused Products and Services')." In ¶ 21, Enovsys further alleges that Lyft "requires drivers providing services through Lyft to use the Driver App provided by Lyft to access the Lyft Mobile Network."

Contrary to Lyft's assertions, no third party is required to meet the claimed limitations. The

---

[7] All paragraphs reference herein are to the Complaint (Dkt. 1), unless otherwise noted.

Complaint alleges that the "portable mobile remote unit" limitation of claim 1 is met by, for example, "Driver Apps and Customer Apps … installed on smartphones or mobile devices." Paragraph 126 of the Complaint alleges that the "network of communication units" is formed by communication units in the Lyft Platform that send data to and receive data from the Driver App and Customer App that are "programmed to enable wireless communication with the Lyft Platform via the portable remote devices (e.g., smartphones)." The Lyft Platform "request[s] … the location information of portable mobile remote units" (¶¶ 130-31) and "location information of the portable mobile remote unit" is provided by Driver Apps and Customer Apps controlling the smartphones (¶¶ 132-36). The Lyft Platform also determines whether "another portable mobile remote unit has maintained relative proximity to the portable mobile remote over a period of time while in motion." (¶¶ 137-41.) In response to the statement that the Lyft Mobile Network is "directed to wireless communication networks not operated by Lyft" (Mot. at 8), the Complaint alleges that the Lyft Mobile Network includes "servers at the Lyft Platform wirelessly connected to Lyft's Driver Applications and Lyft Customer mobile device applications."  (¶ 19.)  Thus, the allegations concerning the Lyft Mobile Network are directed to components provided by Lyft that enable a communication path to and from the Lyft Platform by operations programmed by Lyft.  *See SiRF Tech., Inc. v. International Trade Commission*, 601 F.3d 1319, 1329-31 (Fed. Cir. 2010). Even if some actions are deemed to be done by the driver or rider, the allegations that Lyft requires them to use the Driver or Ride App allows for the reasonable inference that they perform these actions as a condition of receiving the benefit of using the rideshare platform.  *See Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1376, 1378 (Fed. Cir. 2017).

All of these are direct allegations that, or form the basis for a reasonable inference that, Lyft provided these products or services, controlled the servers and other components of the Lyft Platform, provided the Driver App and Customer App that Lyft programmed to communicate with the Lyft Platform, and required use of its applications as a condition for receiving the benefit of engaging with its system.

Lyft's critique of the allegations regarding method claim 12 of the '726 patent is similarly flawed.  Lyft's argument that there is no single actor performing the infringing steps ignores the allegations that the Customer App and Driver App's use was required by Lyft as a condition of

receiving the benefits of its system, and that they were programmed by and provided by Lyft.[8] The Complaint alleges that only Lyft-provided and Lyft-required components carried out the infringement steps.

The Complaint sufficiently notifies Lyft that it directly infringes the patents-in-suit because any steps taken by the customer or driver that are a prerequisite to infringement are required by Lyft in order for the driver or customer to obtain the benefit of Lyft's service, either as a driver or customer. As alleged, Lyft requires its drivers to use its Driver Application in order to provide their services to Lyft.  Likewise, as alleged, Lyft requires its customers to use its Customer Application in order to receive Lyft services. Thus, Enovsys has adequately and plausibly alleged direct infringement by Lyft and Lyft's request for dismissal on the ground should be denied.

## B.  Enovsys' Complaint Plausibly Alleges Infringement By Lyft

Lyft's argument that Enovsys' Complaint contains only a repetition of claim language and conclusory allegations is meritless. For every limitation of each asserted claim, the Complaint identifies the relevant claim language, then follows it with specific exemplary factual allegations of how the language is met by Lyft using specific examples from the Driver App, Customer App and the Lyft Platform.  Lyft's suggestion that similar allegations cannot be made against similarly situated defendants, and that this undermines the plausibility of the Complaint, is likewise not well taken. Both Lyft and Uber provide ridesharing platforms accessed through custom programmed applications they provide to be installed on mobile devices that leverage location-based services to communicate with their respective platforms.  It should not be surprising that they infringe in similar ways.

Lyft's statement that the Complaint's "infringement allegations rest on attorney argument without any actual evidence supporting its claims" (Mot. at 9) and that "Enovsys could have easily reviewed Lyft's publicly available apps accused of infringement and the ample documentation about Lyft's products before filing its Complaint" (Mot. at 2) reflects a misapprehension of what is required at the pleading stage.  The Complaint is not an Initial Disclosure under Rule 26, nor is

---

[8]  Lyft does not seem to dispute the Lyft Platform is alleged to be controlled by Lyft, but to the extent that this is disputed, see the discussion above concerning the allegations in ¶¶ 18-52.

OPPOSITION TO MOTION TO DISMISS                                    CASE NO. 5:23-cv-05157-EJD

it a Disclosure of Asserted Claims and Infringement Contentions under the Patent Local Rules of this District.  So, while Enovsys did review Lyft's publicly available information prior to filing the Complaint, the citation to that information is not required at this stage.  *See AlterG, Inc. v. Boost Treadmills LLC*, No. 18-cv-07568-EMC, 2019 U.S. Dist. LEXIS 151688, at *10-11 (N.D. Cal. Sep 05, 2019) ("Defendants are incorrect to assert that infringement allegations must meet the standard of specificity applied to infringement contentions under this district's Patent Local Rules simply because the complaint references a claim chart that conforms to Patent Local Rule 3-1(c).").

Addressing Lyft's specific points, the Complaint contains factual allegations concerning the requirement of claim 1 of the '752 patent that there is a "determination that the remote unit maintained close proximity to the mobile consumer over the period of time of (i)."  The antecedent basis for the "period of time" in element iv) of claim 1 is in element i), which recites "obtaining the location of the wireless consumer at intervals over a period of time."  (¶ 60.)  The Complaint alleges that this limitation is met because "the Lyft Platform periodically obtains from the Customer App its GPS location coordinates when the Customer App is active, such as when the rider has opened the Customer App and is planning a ride or has made a ride request." (¶ 61.)  The Complaint further alleges that "the match and location systems of the Lyft Platform identify a list of the online Driver Apps within the S2 geospatial cell of the active Customer App that have reported their location since the time the Customer App made the service request."  (¶ 65.)  As such, the Complaint directly alleges, or plausibly infers, that the period of time in element iv) includes at least the time from when a ride request is made to when a potential driver match is being identified.  Furthermore, the allegation that the Lyft Platform requests GPS coordinates from "Driver Apps located within the S2 geospatial cell of the active Customer App" (¶ 63) directly alleges, or allows a plausible inference, that "maintained close proximity" is satisfied when a device remains within the relevant S2 geospatial cell.

Regarding claim 6, the Complaint also alleges that "[t]he geographic boundary of the circle created and received by the match system is, of course, wider than the GPS coordinates of the Customer App" (¶ 89), which is stated in support of the limitation of "receiving at the network a wider than normal prescribed geographic boundary" (¶ 87).  Thus, the Complaint directly alleges, or allows a plausible inference, that the GPS coordinates of the Customer App define a normal

- 12 -

area and search area for the match system is wider than normal.  What Lyft is implicitly arguing is that the factual allegations do not meet the claim limitation of "wider than normal" under some undisclosed construction of that term.  Assuming, *arguendo*, that this term requires construction and Lyft is urging dismissal on this basis, it demonstrates that this ground for Lyft's motion is premature.

Lastly, the Complaint alleges what meets the limitation of "obtaining from the network geographic information describing the geographic boundary" in claim 3 of the '752 patent.  Lyft claims that it does not know what the network is.  But, as noted above, there are predicate factual allegations common to all of the counts in the Complaint, including the allegation that the Lyft Mobile Network includes S2 servers at the Lyft Platform that communicate with Driver and Customer Apps.  (¶¶ 19, 24.)  When one component in a network, *e.g.*, a Driver App, receives information from another component in a network, *e.g.*, a server in the Lyft Platform, the first component has obtained that information "from the network," which is what ¶ 71 alleges.

The factual allegations in the Complaint far exceed the requirements of *Iqbal/Twombly*, and thus the Motion should be denied on this ground. To the extent it is determined that any part of the current allegations are deficient, such deficiencies can be remedied in an amended pleading.

### C.  The Asserted Claims Are Not Abstract

Under step one of *Alice*, courts "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). "If the claims are in fact directed to a "technological improvement over the existing… techniques," then the claims pass at step one. *Id*. at 1316. Such is the case here. As their own language shows, and the common specification describes, the asserted claims of all patents are grounded in new telecommunication architectures and devices and are directed to improving those technological architectures by employing devices that allow for and fulfill tracking and proximity determinations and to make these determinations in specific ways.  Moreover, the claims perform various acts, including communicating with mobile devices that are identified in the proximity and tracking determinations. These devices provide additional functionality, safety, prevent network overload and promote efficiency and reduced power

consumption.  Technical improvement to safety and efficiency can be a basis on which to find that patents are not abstract under step one of *Alice*.  S*ee EcoServices, LLC v. Certified Aviation Serv*., *LLC*, 830 F. App'x 634, 642-43 (Fed. Cir. 2020) (citing a patent's description of "a higher degree of safety" and "cost efficien[cy]" as advantages that provided a non-abstract technical improvement).

### 1.   The '752 Patent Claims Pass Step One

As discussed above, the claims of the '752 patent all contain limitations directed to at least one of: 1) conserving resources by focusing on a certain region, 2) enabling tracking by identifying devices that maintained proximity over repeated intervals, 3) conserving resources by using exclusion regions, 4) conserving resources by generating lists of relevant devices that narrows the number of devices of interest, and 5) not unnecessarily continuing to send requests when all regions have been queried. These are concrete improvements to the functionality of a network of location enabled devices that meet the objective of the specification for improved location enabled wireless telecommunication systems that provide safety, proximity, or tracking determinations while preventing network overloading and inefficiency in power consumption.

### 2.   The '918 Patent Claims Pass Step One

As discussed above, the claims of the '918 patent all contain limitations directed to at least one of: 1) computing correlations between device locations in order to determine that one is tracking another, 2) conserving resources by focusing on a certain region, 3) evaluating additional parameters to reduce system overload by only retrieving data in defined circumstances, 4) conserving resources by preventing the unnecessary reporting by devices, and 5) conserving resources by querying smaller regions first, then expanding them. These are concrete improvements to the functionality of a network of location enabled devices that meet the objective of the specification for improved location enabled wireless telecommunication systems that provide safety, proximity, or tracking determinations while preventing network overloading and inefficiency in power consumption.

### 3.   The '726 Patent Claims Pass Step One

As discussed above, the claims of the '726 patent all contain limitations directed to at least

one of: 1) computing correlations between device locations in order to determine that one is tracking another, and 2) conserving resources by focusing on a certain region. These are concrete improvements to the functionality of a network of location enabled devices that meet the objective of the specification for improved location enabled wireless telecommunication systems that provide safety, proximity, or tracking determinations while preventing network overloading and inefficiency in power consumption.

### D. Lyft's Step One Arguments and Analogies Incorrectly Describe The Asserted Claims And Do Not Follow The Law

#### 1. The Analysis That Claim 15 Is Abstract Is Flawed

Lyft asserts claim 15 (and every other claim) is abstract but does not identify non-technological equivalents to the actual requirements or longstanding human activity that these inventions merely attempt to mirror or replicate though wireless communication network components and algorithms. Not one of the asserted claims can be performed without the host of communication devices and other network elements recited by the claims, and it is contrary to the law of *Alice* to first strip those devices and other network elements from the claims before assessing their supposed abstractness.

Lyft nonetheless does just that by asserting that the claims of the patents-in-suit are "much like the timeworn, real-world scenario of a detective watching to see if someone is being followed in a neighborhood or precinct" and that the "solution to the patent's stated problem of figuring out if someone is being followed is no more complex than a detective staking out an area to verify if a witness is being followed and reporting on what he sees." (Mot. at 3.) Although the "directed to" inquiry is a "stage-one filter," the Federal Circuit has cautioned against "describing the claims at such a high level of abstraction and untethered from the language of the claims" such that it "all but ensures that the exceptions to § 101 swallow the rule." *Enfish,* 822 F.3d at 1337. After all, any generalized view of a claim would, "if carried to its extreme, make all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious." *Diamond v. Diehr,* 450 U.S. 175, 189 n.12 (1981). As such, the Federal Circuit "sometimes incorporates claim limitations into its articulation of the idea to which a claim is directed." *BASCOM*, 827 F.3d at 1349.

Applying these principles here, Lyft's characterization of the claims sweeps too broadly. The asserted claims are directed specific methods and systems of evaluating selective parameters to improve tracking and proximity determinations in wireless networks. Claims are patent eligible when they claim a different process for accomplishing something a human could perform and not merely a computerization of an age-old process. Even if Lyft's fabled detective was using pen and paper to record observations of who is nearby a person, that completely differs from the claimed methods and systems for making tracking and proximity determinations within a geographic boundary of a telecommunication network. Lyft's analogy makes no sense because detectives do not routinely or conventionally have every possible suspect report their location to the detective at regular intervals to determine whether the suspect is following the client, so the problem does not even arise as to how to process such location data effectively much less in the specific ways claimed. Detectives do not conventionally or routinely have individuals selectively report their location only if they are within a specified geographic boundary or have travelled a minimum distance or have exceeded a certain velocity. Detectives do not face the problems of wireless networks who may be having portable remote units making tracking requests from potentially anywhere in the globe within the network's coverage area, nor do they address the problem of network overload from units reporting their locations at regular intervals. It is also unclear how the detective in Lyft's purported example of routine, conventional human activity can be used to practice the claimed inventions. Human brains do not transmit or receive RF signals, they do not have the ability to electronically submit a signal to request the location of a unit at intervals for a period of time, or to resolve whether a mobile device is within a specific geographic boundary, or to measure the velocity or distance travelled of a mobile device or to even for that matter time that the mobile device has been reporting a location. Not one of the asserted claims can be performed without the host of communication devices and other network elements recited by the claims, and it is contrary to the law of *Alice* to first strip those devices and other network elements from the claims before assessing their supposed abstractness. *See McRO*, 837 F.3d at 1313.

Lyft tellingly does not make any actual pre-emption argument, but it bears noting that the claims do not cover every system or method of tracking of two devices in a wireless network relative to each other but specific ones, including using various parameters to reduce the number

of units that have their locations considered in making the tracking or proximity determinations. Thus, the "character as a whole" of the claims is not directed to making tracking or proximity determinations generally (although Lyft cannot state that this was any conventional or routine activity, including particularly in a wireless network), but specific ways to make such determinations. As such, they do not preempt the field of location-based services in wireless networks or even device tracking generally in wireless networks but rather are tethered to a specific and concrete way of identifying wireless units in close proximity to particular unit in the wireless network. The claims provide a useful solution to problems that would arise in wireless networks making proximity or tracking determinations without these claimed systems/steps.

Lyft argues that the asserted claims are invalid because the purported "focus" of the claims, "(1) collecting location information, (2) analyzing it, and (3) presenting results," is abstract. (Mot. at 13.) Lyft asserts that *Electric Power Group* stands for the proposition that the Court need only focus on dominant concepts. (*Id.*) But the claims in *Electric Power Group* were not directed to any specific techniques for improving the performance of a network in performing specific tasks, as are the claims here. There, the claims were squarely directed only to monitoring and displaying electrical grid parameters from multiple sources in real-time to detect events. *See Elec. Power Group,* 830 F.3d at 1351-52. The Federal Circuit found those claims merely "defin[ed] a desirable information-based result and [were] not limited to inventive means of achieving the result." *Id.*, 1351. In contrasting the *Electric Power Group* claims to the claims in *DDR Holdings* and *BASCOM*, the Federal Circuit observed that the claims at issue there "do not require an arguable inventive device or technique" or "arguably inventive distribution of functionality within a network" such as "the installation of a filtering tool at a specific location..." *Id.*, 1355-56. The Federal Circuit therefore cited with approval the distinction between "patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general" and agreed that the claims there did not come up with "some particular implementation" as do the claims of the patents-in-suit, but rather purported to "monopolize every possible solution to the problem." *Id.*, 1356.

Lyft also asserts that the asserted claims here "are very similar to those invalidated a year ago in [*Weisner*] and [*Zillow*]," which Lyft characterizes as "binding" precedent though they

involve different patents and claims. (Mot. at 14.)  *See*, *Weisner v. Google LLC*, 51 F.4th 1073 (Fed. Cir. 2022) and *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371 (Fed. Cir. 2022). Lyft ignores that the claims in two other asserted patents in *Weisner* were found to be eligible.  The court further found that "using location histories in computerized searching [w]as a distinct concept from mere accumulation of location histories" and the claimed recited "a specific implementation of the abstract idea that purports to solve a problem unique to the internet and that, accordingly, these claims should not have been held ineligible under step two at this stage." *Weisner*, 51 F.4th at 1085.

Lyft asserts *Zillow* is analogous because, "[t]here, just like here, a bounded area of the map was one of the critical limitations, but that added nothing patentable." (Mot. at 14.)  But the *Zillow* claims were in fact vastly different. Those claims were "directed to the abstract idea of responding to a user's section of a portion of a displayed map by simultaneously updating the map and a co-displayed list of items on the map."  *Zillow*, 50 F.4th at 1377.  The claims involve more than display of information in which the amount of information displayed to the user is computer updated based upon the user's selection. Rather, the claims are directed to specific methods and systems to improve making proximity and tracking determinations by applying various filtering to reduce the amount of data that needs to be processed to make such determinations. Some claims apply geofencing, including geographic boundaries, exclusion zones, and minimum velocity and distance parameters as filters to reduce the data set and alleviate overloading.

Similarly, *Linquet* does not stand for the proposition that any claim that involves position or location tracking is somehow patent ineligible.  Like in *Weisner*, the *Linquet* claims "[were] not directed to any specific improvement of community-powered tracking, but rather to providing a community powered tracking solution in the first instance."  *Linquet Techs., Inc. v. Tile, Inc.*, 559 F. Supp. 3d 1101, 1109 (N.D. Cal. 2021). The district court contrasted the *Linquet* claims with those in *Amdocs,* which were "non-abstract because they allowed the system to efficiently and accurately collect network usage information in a manner designed for efficiency to minimize impact on network and system resources thereby enabling load distribution." *Id.* (citing *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1303 (Fed. Cir. 2016).  Here, the claims are similarly not abstract because they are directed to various specific and concrete systems and steps

OPPOSITION TO MOTION TO DISMISS                                    CASE NO. 5:23-cv-05157-EJD

for improving making tracking and proximity determinations in wireless networks. As such, the claims are more like those in *DDR Holdings, BASCOM,* and *Amdocs* than they like those in *Electric Power Ground, Weisner, Zillow,* or *Linquet*.

Lyft also asserts other cases which it argues included "similar claims" that were found to be abstract. (Mot. at 15.) Lyft provides no analysis of those cases whatsoever in comparison to the Asserted Claims and does not even attempt to show how the holdings in those cases apply here.

The ultimate absurdity of Lyft's argument is that, whatever the claims actually require, Lyft characterizes them as simply "collecting," "analyzing" and "presenting" information. But the law does not support this level of abstraction, in which the exception would swallow the rule and apply to every patent involving any data processing whatsoever. A fair characterization of what the disparate claims of the patents-in-suit, when each is correctly viewed in whole, are directed to would be a "method or systems of improving how tracking and proximity determinations for portable remote units are made in wireless networks by using geographic boundaries, minimum distances travelled and/or minimum velocities, exclusion regions, etc., as filters for which units' locations are eligible in making the proximity and tracking determinations." The oversimplified analogy proposed by Lyft is an invalid starting point for an *Alice* analysis. *McRO*, 837 F.3d at 1313 (cautioning against oversimplifying claims); *see also Enfish*, 822 F.3d at 1337-38 (noting that, at step one, courts should not "oversimplif[y]" an invention's key inventive concepts or "downplay[]" its benefits").

### 2. Lyft Incorrectly Ignores Limitations Of Other Asserted Claims

Lyft further argues that the other asserted claims besides claim 15 of the '918 patent are all abstract, and do not change the step one outcome. For example, Lyft focuses on claim 1 of the '918 patent and ignores its dependent claim 2, and does not consider claim 4 of the '752 patent. These claims all are directed to specific techniques for operating on boundary information, including using conditioning actions on whether location reporting is prohibited in an exclusion region. While Lyft similarly argues that determining if a location is inside or outside of a boundary has been done for years, this argument again ignores the claims language to the point of absurdity because these claims do not merely claim determining whether something is within a boundary or not but rather using predetermined specific boundaries to limit the locations of portable remote

units in wireless networks used in determining their eligibility in being included in proximity and tracking determinations to reduce processing in communication networks.  Lyft cites no support for the proposition that actual claimed systems and methods to make the proximity or tracking determinations more efficient was conventional or routine. Nor can Lyft support its bizarre proposition that "applying rules" is abstract. (Mot. at 17.)  Any method that claims specific steps can be characterized as "applying rules" and certainly the claims here have no relationship to the claims in *Electric Power Group*, which merely received and processed for display various measured parameters in an electrical grid, as already discussed *supra.*

Lyft also argues that "determining if an object is being tracked is abstract." As discussed in detail above, describing the patents-in-suit as being generically directed to determining if something is being tracked is an unduly narrow characterization of the patents-in-suit.  It is discussed above that *Linquet* does not stand for the proposition that the process of tracking is *per se* abstract, and that the claims involved in *Linquet* and *Wireless Discovery* are distinguishable. Lyft, in effect, contends that techniques that augment communication networks with the improved functionality cannot supply an inventive concept because it was known in the art that "humans have long collected, analyzed, and reported location information in myriad circumstances, including for tracking user location … ." (Mot. at 20.) This argument ignores the character of the claims as a whole why claim systems and methods as an ordered combination that provide proximity or tracking determinations in a way that conserves resources.

Lyft's detective analogies only serve to highlight the non-conventionality in the Asserted Claims because a detective observes their subject and whether another individual is following them.  Detectives do not routinely or conventionally have every possible suspect in a geographic area report their location to the detective at regular intervals to determine whether the suspect is following the client, so the problem does not even arise as to how to process such location data effectively much less in the specific ways claimed.  Detectives do not conventionally or routinely have individuals selectively report their location only if they are within a specified geographic boundary or have travelled a minimum distance or have exceeded a certain velocity.  Detectives do not face the problems of wireless networks who may be having portable remote units making tracking requests from potentially anywhere in the globe within the network's coverage area, nor

do they address the problem of network overload from units reporting their locations at regular intervals.

Lyft's oversimplification of the focus of the asserted claims disregards the limitations of the claims that require much more than merely "watching someone to see where they go, figuring out if anyone is in the vicinity nearby or is following them, and then reporting it" as they contend. (Mot. at 13.) The specific limitations in the claims are important aspects of the claimed improvement to the technique for providing proximity or tracking determinations to wireless network participants that require the units to routinely report their locations in intervals and to apply geographical boundary or other filters to first determine who is eligible for being included in making such determinations only for units reporting their locations within a specified geographic boundary or other criteria. Accordingly, like the claims in *DDR Holdings*, the claims at issue here "do not broadly and generically claim" location tracking or even merely making proximity or tracking determinations but rather "specify how interactions with the [wireless networks] are manipulated to yield a desired result. . ." *Id*. at 1258.

The Asserted Claims pass step one.

### E.  The Claims Pass Step Two

At step two, courts "consider whether the claims contain an 'inventive concept' sufficient to 'transform the nature of the claim into a patent-eligible application.'" *McRO*, 837 F.3d at 1312 (quoting Alice, 134 S. Ct. at 2355)). Lyft failed to acknowledge any difference in step one between the asserted method claims and those that recite systems and devices and fails to do so in step two. A claim does recite an inventive concept if it includes technical steps or elements that "go beyond 'well-understood, routine, conventional activity.'" *BASCOM*, 827 F.3d at 1348 (quoting Alice, 134 S. Ct. at 2359).

For example, in *BASCOM* the claims set forth an inventive concept by reciting a "nonconventional and non-generic arrangement of known, conventional pieces" to achieve a "technical improvement over prior art ways of" filtering content on the Internet that "improve[d] an existing technological process." *Id*. And in *DDR*, the claims "recite[d] an invention that is not merely the routine or conventional use of the Internet" and was "rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR*

OPPOSITION TO MOTION TO DISMISS

*Holdings,* 773 F.3d at 1257, 1259.

Thus, even if invention of the claims of the patents-in-suit were found to be directed to an abstract idea, they would still be patent eligible because those claims contain limitations providing for improved techniques for improving safety by making efficient proximity or tracking determinations sufficient to transform the nature of the asserted claims into a patent-eligible application of the concept of providing proximity or tracking determinations. As in *DDR Holdings,* the asserted claims in this case overcome a problem specifically arising in the realm of wireless networks by claiming specific techniques in making proximity or tracking determinations. In *McRO*, the Federal Circuit determined that the "claimed process[es] us[ing] a combined order of specific rules" that improved on existing technological processes were deemed patent-eligible. *McRO,* 837 F.3d at 1315.

The asserted claims of the patents-in-suit do not merely recite the performance of some business practice known from the pre-computer world or merely add the performance of the practice using a computer. The asserted claims patent specific narrowing techniques useful to wireless networks that provide its users with proximity or tracking determinations that are efficient and keep them safe.  These narrowing techniques are very much like the narrowing technique taught by the patent in *Fitbit v. Aliphcom*, 233 F. Supp. 3d 799, 813 (N.D. Cal. Feb. 9, 2017) in which this Court found "narrow[ing] the field of possible portable devices to pair by [a server] sending the client the list of devices that are 'eligible'" supplied an inventive concept under *Alice* step 2.

Each asserted claim recites elements and limitations that were not routine or conventional at the time of the invention.  Telecommunication networks that even allowed a third-party request for the physical location of a mobile device were not available much less routine in 2000. And certainly Lyft does not and cannot show that any of the following claimed features were routine and conventional within the industry of mobile communication networks at the time of the invention: (a) fulfilling requests from a third-party source for the location of portable mobile devices in a prescribed geographic boundary; (b) having all mobile remote units within a specified boundary disclose their location to the network at intervals; (c) using exclusion regions from the network for which the location of a portable mobile remote unit should not be considered; (d)

responding to request for locations within a specified boundary by splitting the geographic boundary into sub-regions before recursively initiating request for the location of portable mobile devices within each sub-region until a portable mobile device based upon geographic locations, (e) creating lists or inventories of candidates for proximity and tracking determinations using geographic boundary, distance, time and velocity criteria; (f) making any proximity or tracking determinations whatsoever; (g) having mobile devices disclose their locations only when within a prescribed geographic boundaries provided by the network; (h) making tracking or proximity determinations whereby the location of the portable remote unit is only disclosed if it is within a prescribed geographic boundary provided by the system; (i) obtaining  the location of a first and second portable mobile remote device within the network at regular intervals and reporting to a requestor whether the first mobile device in a specified geographic region is maintaining relative proximity to the second mobile device for a time period or given distance; (j) determining that a first portable device has maintained proximity, while in motion for a time, to a second mobile device when both devices are providing their location to the network during that period of time; (k) allowing for a wireless consumer to specify a geographic boundary within the telecommunication network where the position of a portable device that is also able to establish its geographic position with the network should be reported; (l) identifying whether a mobile device in a communication network was actually in the geographic region where a notification was intended to be received; and (m) having a mobile device respond to a notification within a telecommunication network only if it exists within a geographic boundary prescribed by the network for the notification. Notably, many of these features are not aspects of the purportedly "representative" claim 15 of the '918 patent.

Lyft does not show that the actual claim requirements in providing specific proximity or tracking determinations in wireless networks are mere conventional techniques. These limitations providing for improved techniques of making proximity or tracking determinations in their specific manner are sufficient to transform the nature of the asserted claims into a patent-eligible application of the concept of making proximity or tracking determinations at all.  And Lyft does not even attempt to assert that *even making* any proximity or tracking determinations was conventional or routine in wireless networks.  Tellingly, Lyft does not point to any example of a

common or routine practice which the claimed invention purported to merely automate. Instead, they only argue that splitting geographic boundaries into sub-boundaries and determining whether something was inside or outside of a geographic boundary could be done by hand.  The only routine, conventional human activity Lyft can point to is via their inapt detective analogies.

Moreover, the asserted claims are not directed to any means whatsoever of providing tracking or proximity determinations. Like the claims in *DDR Holdings*, the claims at issue here "do not broadly and generically claim" location tracking or even merely making proximity or tracking determinations but rather "specify how interactions with the [wireless networks] are manipulated to yield a desired result … ." *DDR Holdings,* 773 F.3d at 1258.  Rather, the Asserted Claims present the ordered combination of their specific elements to address: safety, reliability, reduction in network overloading, storage and processing in wireless communication networks that offer location tracking capability.

Enovsys has pleaded that the patents were validly issued, and Lyft has failed to show by clear and convincing evidence that the patents-in-suit claim are patent ineligible, insignificant, routine, and conventional activity.  Any purported deficiency in the complaint's allegations as to eligibility can be addressed, and should be allowed, in an amended complaint that incorporates factual allegations made herein. *See, e.g., Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1127 (Fed. Cir. 2018)) (reversing a district court that dismissed claims after the plaintiff requested leave to amend its complaint, which "supplie[d] numerous allegations related to the inventive concepts present in the claimed form file technology.")

### F.  Lyft's Motion to Dismiss Is Ill-Timed Because Claim Construction and A Fulsome Record Is Needed

Several claims contain "means plus function" elements that must be construed according to 35 U.S.C. § 112(f). "Once a court establishes that a means-plus-function limitation is at issue, it must identify and construe that limitation." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003). Claim construction is inappropriate at the pleading stage. *See Deston Therapeutics LLC v. Trigen Labs Inc.,* 723 F. Supp. 2d 665, 670 (D. Del. 2010) ("While it is true that claim construction is a matter of law to be determined by the Court, the process for properly construing a patent claim is unsuited for a motion to dismiss.") This case, like others, will

involve opposing expert testimony on claim construction of these elements and others that must be considered in light of a full record.  The asserted systems claims recite various and disparate means plus function components, and the construction of these system components will clearly factor in any step two analysis.   Furthermore, "[l]ike other provisions of the "state of the art that provides the objective baseline for the analysis. Section 101 [analysis] should be no exception." *Ameritox, Ltd. v. Millenium Health,* LLC, 2015 WL 728501 at *25 (W.D. Wis. Feb. 19, 2015). Lyft has offered no evidence (and cannot at this stage) as to the state of the art at the time of invention, nor sought to show that the unique, unconventional wireless network implementation of the patents-in-suit were somehow "purely conventional" as in *Alice*. Whether the claims at issue involve more than well-understood, routine, and conventional activities is a factual question. *See Berkheimer*, 881 F.3d at 1369. Thus, there are many issues relating to claim construction, expert testimony, and the understanding of one of ordinary skill in the art that cannot be resolved at this stage. Unsurprisingly, Lyft fails to analyze a single case in which any court granted a Rule 12(b)(6) motion invalidating means-plus-function claims, like those in each of the patents-in-suit, which are governed by § 112(f). The Federal Circuit admonishes that invalidating any patent prior to claim construction is the exception rather than the rule. *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1274-75 ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis…").

## V.     CONCLUSION

For the reasons discussed above, the claims of the patents-in-suit are directed at the patent-eligible concept of improving how proximity and tracking determinations are made in wireless network to solve problems specific to wireless network, including safety issues.  Accordingly, the Court should deny the Defendant's motion and hold that the Complaint included sufficient direct infringement allegations against Lyft and the asserted claims are directed at patent-eligible subject matter in accordance with 35 U.S.C. § 101. Alternatively, Enovsys requests leave to file an amended pleading addressing any perceived shortcomings in the allegations regarding direct infringement and eligibility, as discussed *supra*.

DATED: December 22, 2023                    Respectfully submitted,

                                            */s/* Sandeep Seth
                                            Sandeep Seth
                                            (CA State Bar No. 195914)
                                            Email:  ss@sethlaw.com
                                            SETHLAW PLLC
                                            Pennzoil Place
                                            700 Milam Street, Suite 1300
                                            Houston, Texas 77002
                                            Tel: (713) 244-5017
                                            Fax: (713) 244-5018

                                            Stanley H. Thompson, Jr.
                                            (CA State Bar No. 198825)
                                            E-mail: stan@thompsontechlaw.com
                                            THOMPSON TECHNOLOGY LAW
                                            655 N. Central Ave., 17th Floor
                                            Glendale, CA  91203
                                            Tel: (323) 409-9066


                                            *Attorneys for Plaintiff*
                                            *Enovsys LLC*

OPPOSITION TO MOTION TO DISMISS                    CASE NO. 5:23-cv-05157-EJD

1

## **CERTIFICATE OF SERVICE**

2

3          The undersigned hereby certifies that all counsel of record listed below are being served

4   with a copy of this document, **OPPOSITION TO LYFT, INC.'S MOTION TO DISMISS**

5   **PLAINTIFF'S COMPLAINT**, via email to their email addresses of record below on December

6   22, 2023 per Civil L.R 5-5(a):

7                          JEREMY J. TAYLOR

8                          jeremy.taylor@bakerbotts.com

9                          KATHERINE BURGESS

10                          katherine.burgess@bakerbotts.com

11                          BRADLEY SHIGEZAWA

12                          bradley.shigezawa@bakerbotts.com

13

14

15

16   Dated:    December 22, 2023                By: */s/ Sandeep Seth*

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS                          CASE NO. 5:23-cv-05157-EJD